# CASES DETERMINED

# August Term, 1904.

SCHISSLER, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 28—September 27, 1904.*

*Criminal law and practice: Insanity: Evidence: Expert witnesses: Hypothetical questions: Rebuttal: Discretion: Constitutional law: Trial of main issue by jury which has found defendant sane: Re-examination of jurors: Improper remarks of counsel: New trial: Prejudice or misconduct of jurors: Instructions to jury: Test of insanity: Immaterial errors.*

1. In a prosecution for murder, a reasonable doubt of the sanity of the accused is *held* not to have been so clearly shown by the evidence as to justify the court in holding as matter of law that the verdict finding him sane was wrong.
2. Defendant shot and killed a man who, in a carriage together with another couple was accompanying defendant's wife home after an evening at the theater and a subsequent luncheon. On trial of the special issue of insanity, he introduced evidence to show his unusual affection and devotion towards his wife and child; that he was ignorant of any fact which should cause him to question her fidelity; that when he learned of her conduct on that evening, casting a suspicion upon her faithfulness to the marriage vow, it so shocked him as to cause an epileptic seizure, resulting in epileptic insanity which continued until after the homicide, rendering him irresponsible for the act. *Held*, that it was proper to permit the state to show that defendant had kept a saloon frequented by women of ill repute, including his wife; that he kept them there for immoral purposes; and that while under arrest for keeping a disorderly house he

Schissler v. State, 122 Wis. 365.

had married his wife in order to make her incompetent as a witness against him.

3. An hypothetical question to an expert witness need not embrace all the material facts in evidence bearing upon the subject of inquiry.

4. A medical expert testified that in his opinion defendant was afflicted with epilepsy at about the time of the homicide. It appeared that this opinion was based almost wholly upon the description given by defendant of his past symptoms, at a single interview, when he was not suffering from the ailment; and that the witness had never seen him suffer from epilepsy or treated him therefor. It did not appear what examination of defendant the witness had made; and there was no other evidence of some of the symptoms which defendant had detailed to him. *Held*, that the opinion of the witness, above stated, was properly stricken out.

5. Where defendant, having the affirmative on the special issue of insanity, had offered evidence as to a certain injury to his head as the cause of his mental condition, going fully into the question, and the testimony for the state, tending to show that his health and mind were not impaired by such injury, was merely a refutation, without developing any new phase of the subject, it was not an abuse of discretion for the trial court to refuse to receive further testimony on the subject offered by defendant.

6. In a criminal case, the jury which has passed upon the special issue of insanity and found the defendant sane is not incompetent to try the main issue, and sec. 4699, Stats. 1898, providing that the trial of such main issue shall proceed before the same jury, does not violate the right to trial by an impartial jury, guaranteed by sec. 7, art. I, Const.

7. The trial of the special issue of insanity and of the general issue upon the plea of not guilty is one single continuous trial, and after the jury has passed upon the special issue defendant has no right to re-examine them as to their qualifications to try the remaining issue.

8. To warrant the trial court in granting defendant's request, made after the jury had passed upon the special issue, to re-examine them as to their qualifications to sit originally, there should be a clear and satisfactory showing of the facts upon which such request is made.

9. The jury having been carefully and fully admonished not to give any consideration to comments of counsel for the state addressed to the court in their hearing, and to disregard certain portions of the argument to them which the trial court deemed improper, it is *held* that there was no error in denying

a motion for a new trial on the ground of such improper comments and argument.

10. The verdict in a criminal case should not be set aside on the ground of the prejudice of a juror unless the fact is satisfactorily established; and the decision of the trial court on that question should not be disturbed unless against the clear weight of the evidence.

11. Upon a motion to set aside the verdict for prejudice of a juror, the juror's affidavit in denial of his prejudice may be received and considered.

12. Upon a motion to set aside the verdict on the ground that some of the jurors, during the progress of the trial, had read certain newspaper articles which, it was claimed, prejudiced their minds against the defendant, the decision of the trial court that no improper influence had affected the verdict is *held* not to be against the clear weight of the evidence.

13. The statement, in one portion of the charge, that the test of insanity was the presence or absence of delusions was not a prejudicial error where, construing the charge as a whole and as the jury undoubtedly understood it, they were given the broadest latitude to find the fact of insanity if defendant was incapable of distinguishing between right and wrong by reason of a perversion of his mental and moral faculties, or if he was thereby rendered unconscious of the nature of the act.

14. Such statement, even if taken by itself, was not prejudicial error in this case, since the evidence showed that defendant's acts, at the time of the homicide, were consciously directed to the fulfilment of a purpose, and that such purpose, if the product of an insane mind, must have been accompanied by a delusion of some kind.

ERROR to review a judgment of the municipal court of Milwaukee county; A. C. BRAZEE, Judge. *Affirmed.*

The plaintiff in error was convicted of the crime of murder in the second degree. Frederick W. Reul was shot by plaintiff in error on November 25, 1902, while occupying a carriage in company with three others, namely, William H. Crandall, Miss Anna Benson, and Mrs. Schissler, the wife of plaintiff in error. The immediate circumstances of the homicide, as disclosed by the evidence, show that this party of four had spent the previous evening at the Davidson Theater, in the city of Milwaukee, and after the performance

had participated in an after-theater luncheon until about the hour of 12 o'clock, when they took a carriage, and drove to the house of the plaintiff in error. On arriving at his home, about twenty minutes after 12, plaintiff in error appeared on the street, approached the carriage door, projected himself partly into the open window of the door, placed one of his hands on that of the deceased, which was resting on the casing of the open window. He had a revolver in his other hand. He looked at the deceased, who sat on the front seat beside Mrs. Schissler, saying: "Who are you?" and, before a reply could be given, fired a shot from the revolver, and said, "Take that." The bullet from this shot pierced Mr. Reul's breast, inflicting a mortal injury, from which he died within an hour.

The deceased was a young man, about twenty-two years of age, engaged as a clerk in the banking business at Watertown, Wisconsin. For about a month before his death he had spent a part of each week in Milwaukee, receiving private instruction at a school of acting. He had met the wife of plaintiff in error at this school, which she attended as a pupil, some days before November 25th. So far as the proof discloses, he had no knowledge of her marriage to any person, and knew her as Miss Desmond, by which name she was registered at the school and so known by those attending it.

At the time of the homicide plaintiff in error was thirty-seven years of age. He had lived in Milwaukee all of his life. After leaving school, he had been employed by others until 1891, when he engaged in and conducted a saloon business until within five years of the time in question. During the five years last preceding the homicide he was engaged in partnership with a Mr. Morgenroth in the business of selling pools and betting money on horse races which were being run in various parts of the country. He had been married about nine years. He, with his wife and daughter, occupied a residence on Cedar street, in the city of Milwaukee.

Other material facts relating to the questions assigned as error upon the trial will be referred to in the opinion.

Plaintiff in error was tried upon the preliminary issue of insanity. Upon the trial of this issue the jury found him sane, and he was then tried upon the issue raised by his plea of not guilty before the same jury, and was found guilty of murder in the second decree. He brings this writ of error from the judgment and sentence upon this conviction. Most of the questions presented for review arose upon the trial of the special issue of insanity.

For the plaintiff in error there were briefs by *H. J. Killilea* and *A. C. Umbreit,* attorneys, and *Fiebing & Killilea* and *Hoyt, Doe, Umbreit & Olwell,* of counsel, and oral argument by *A. C. Umbreit* and *H. J. Killilea.* To the point that a new trial should have been granted on account of the improper and prejudicial remarks of counsel for the state, they cited *Gutzman v. Clancy,* 114 Wis. 589; *MacCarthy v. Whitcomb,* 110 Wis. 123; *Waterman v. C. & A. R. Co.* 82 Wis. 637; *Masterson v. C. & N. W. R. Co.* 102 Wis. 571, 78 N. W. 757; *McNamara v. McNamara,* 108 Wis. 613; *Scripps v. Reilly,* 38 Mich. 10; *Rudiger v. C., St. P., M. & O. R. Co.* 101 Wis. 292; *Brown v. Swineford,* 44 Wis. 291; *Hennies v. Vogel,* 87 Ill. 242; *Sutton v. C., St. P., M. & O. R. Co.* 98 Wis. 157; *Chase v. Chicago,* 20 Ill. App. 274; *Hocks v. Sprangers,* 113 Wis. 123; *Bremmer v. G. B., S. P. & N. R. Co.* 61 Wis. 114; *Andrews v. C., M. & St. P. R. Co.* 96 Wis. 348; *Schaidler v. C. & N. W. R. Co.* 102 Wis. 570; *Schillinger v. Verona,* 88 Wis. 323; *Gillan v. State Journal P. Co.* 96 Wis. 460; *Taylor v. C. & N. W. R. Co.* 103 Wis. 31; *Wunderlich v. Palatine F. Ins. Co.* 104 Wis. 382; *Sasse v. State,* 68 Wis. 530; *People v. Ah Len,* 92 Cal. 282; *People v. Quick,* 58 Mich. 321; *State v. Noland,* 85 N. C. 576; *Ricks v. State,* 19 Tex. App. 308; *State v. Young,* 99 Mo. 683; *Martin v. State,* 63 Miss. 505; *Brow v. State,* 103 Ind. 133; *People v. Dane,* 59 Mich. 550; *State v. Fischer,*

124 Mo. 460, 27 S. W. 1109; *Parks v. State,* 35 Tex. Crim. 378, 33 S. W. 872; *Reggie v. People,* 135 Ill. 533, 26 N. E. 377; *Murphy v. State,* 108 Wis. 111; *Scott v. State,* 91 Wis. 552; *State v. Thompson,* 106 La. 366; *State v. Blackman,* 108 La. 121; *State v. Kring,* 64 Mo. 595; *Rhodes v. Comn.* 107 Ky. 354; *People v. Fielding,* 158 N. Y. 542; *Bliss v. State,* 117 Wis. 596, 94 N. W. 325.

For the defendant in error there was a brief signed by the *Attorney General* and *W. H. Bennett,* district attorney of Milwaukee county, and by *W. D. Corrigan,* second assistant attorney general, and *F. E. McGovern,* assistant district attorney of Milwaukee county, of counsel; and the cause was argued orally by *Mr. McGovern* and *Mr. Corrigan.* As to the alleged prejudicial remarks of counsel, they cited *Gutzman v. Clancy,* 114 Wis. 589, 597; *Brown v. Swineford,* 44 Wis. 282, 293; *Hardtke v. State,* 67 Wis. 552; *Schillinger v. Verona,* 88 Wis. 317, 323; *Sullivan v. Collins,* 107 Wis. 291, 298; *Hinton v. C. C. R. Co.* 65 Wis. 323, 332; *Firmeis v. State,* 61 Wis. 140; *Hacker v. Heiney,* 111 Wis. 313, 320; *Williams v. State,* 61 Wis. 281, 290; *Rollins v. State,* 59 Wis. 55; *State v. Clifford,* 58 Wis. 113, 124; *Baker v. Madison,* 62 Wis. 137, 146; *Rudiger v. C., St. P., M. & O. R. Co.* 101 Wis. 292, 298; *Friemark v. Rosenkrans,* 81 Wis. 359; *Andrews v. C., M. & St. P. R. Co.* 96 Wis. 348; *Sasse v. State,* 68 Wis. 530, 535; *Waterman v. C. & A. R. Co.* 82 Wis. 613, 637; *Wunderlich v. Palatine Ins. Co.* 104 Wis. 382, 394; *Grace v. McArthur,* 76 Wis. 652, 653; *Dugan v. C., St. P., M. & O. R. Co.* 85 Wis. 609, 612, 613; *Smith v. Nippert,* 79 Wis. 139, 140; *Santry v. State,* 67 Wis. 67; *Kircher v. Milwaukee M. M. Ins. Co.* 74 Wis. 472; *Lalhers v. Wyman,* 76 Wis. 616; *Fertig v. State,* 100 Wis. 301, 307; *Roche v. Pennington,* 90 Wis. 107, 113; *Hoffmann v. State,* 65 Wis. 46, 48; *Bliss v. State,* 117 Wis. 596, 94 N. W. 325, 328; 2 Ency. Pl. & Pr. 730–733, 752, 755; *Wegner v. Second Ward S. Bank,* 76 Wis. 242, 250; *Laue v. Madison,* 86

Wis. 453, 462; *Heucke v. M. C. R. Co.* 69 Wis. 401; *Lowe v. State,* 118 Wis. 641, 96 N. W. 417; *Mayer v. M. St. R. Co.* 90 Wis. 522, 527; *Mulcairns v. Janesville,* 67 Wis. 24, 35; *State v. Anderson,* 10 Oreg. 448; *Knoll v. State,* 55 Wis. 249; *Grottkau v. State,* 70 Wis. 472; *Porath v. State,* 90 Wis. 537; *In re Roszcynialla,* 99 Wis. 537, 538; Abbott's Trial Brief, Crim. Causes, 606, and cases cited.

The following opinion was filed May 10, 1904:

SIEBECKER, J.   The verdict in the special issue of insanity is assailed upon the ground that it is not supported by the evidence.   It is asserted that the proof is insufficient to support the finding of sanity under the statutory provision requiring that if there be a reasonable doubt of the sanity of the accused he shall be found not guilty for that reason.   The claim is that the evidence as to the sanity of the accused proved that he received a serious injury on his head in the year 1891; that he was affected with epileptic seizures from the time of such injury to the time in question; that such attacks increased in frequency and severity from time to time, impairing his mental faculties and blunting his moral powers; that the affliction made him irritable and easily aroused to anger by any slight cause; and that the seizures were accompanied by loss of memory and a want of consciousness of his acts, followed by a state of drowsiness and stupor lasting for hours.   It is contended that the evidence of these facts and the opinions of the experts thereon showed clearly that he was affected with epileptic insanity and was irresponsible for his acts at the time he shot the deceased, and that a doubt of his sanity was thereby so clearly shown that the court should have so held as a matter of law.

It is true that considerable evidence was adduced upon the trial tending to establish these claims, but there was also much evidence in conflict therewith, which directly contradicted the evidence upon which these conclusions of fact are

predicated. Besides this direct conflict in the evidence, there is considerable testimony tending to show that these attacks did not impair his general health and mental faculties nor affect his business capacity and the ability to conduct his business and family affairs; and that his appearance and conduct before and after the homicide revealed nothing to show that he had lost possession of his mental faculties and moral powers. There is also direct and circumstantial evidence controverting the claim that he suffered an epileptic seizure on the evening of November 24th, about two hours before the shooting occurred, and this evidence also tends to show that his health and mind were in their ordinary and normal state. The medical testimony agreed as to the effects of frequent epileptic seizures upon the mind and body, but was sharply in conflict upon the questions whether the accused was subject to epileptic seizures, and, if subject to them, whether it had affected his mind, and whether the accused was in fact insane at the time of the homicide.

The special issue was submitted to the jury upon this conflict of the proof. Upon an examination of the evidence, we are led to the conclusion that it clearly presents a case which required the submission of the special issue to the jury. The trial court also ruled correctly in holding that the jury were justified by the evidence in finding that the plaintiff in error was sane at the time of the commission of the offense charged.

Error is assigned because the court permitted the testimony of a number of witnesses to be received showing the character of and the manner in which the plaintiff in error conducted his business during the period between 1895 and 1898. This testimony was to the effect that he was engaged in the saloon business in the city of Milwaukee; that his place of business was frequented by women of ill repute, and that he kept them there for immoral purposes; that he was prosecuted for such violations of the law; that his wife was an inmate of his house, and had been arrested as such; and that while he was.

under arrest he married her for the purpose of making her
an incompetent witness in the case against him. Such evi-
dence would ordinarily be incompetent upon the trial for a
criminal charge, but this plaintiff in error presented matters
in his defense upon the trial of the special issue which made
this testimony peculiarly pertinent and material. He in-
troduced evidence, over objection, to support the claim that
he entertained unusual affection and devotion toward his wife
and child; that he was ignorant of any fact which should
cause him to question her fidelity to her marriage vow; that
when he learned the facts of her conduct on the evening be-
fore the homicide, casting a suspicion upon her faithfulness
to her marital obligation, it so shocked and disturbed him as
to cause an epileptic seizure, resulting in epileptic insanity,
which continued to the time of the homicide and beyond, thus
rendering him irresponsible for the act. It is asserted that
this evidence disclosing his business and early family affairs
could have no bearing upon the mental condition of the ac-
cused, and could serve no purpose other than to abase him in
the minds of the court and the jury. The evidence, showing
his unceasing and unusual devotion to his wife, and the want
of any grounds for suspecting her fidelity, must have been
offered for the purpose of showing that he was so shocked at
her conduct on the previous day and evening as to subject him
to a severe epileptic seizure, and thereby induce the insanity
under which he is said to have committed the act. The evi-
dence of the state sought to be excluded under this exception
clearly tended to explain and contradict the evidence offered
in his behalf. If the jury found the evidence of the state on
this subject to be true, it directly tended to refute the claim
that he had no ground for suspecting her capable of any
wrongful conduct, and that such information would be likely
to so shock his mind as to produce mental derangement and
consequent irresponsibility for his acts. The evidence was
material in view of the proof produced by the plaintiff in

error on the special issue as to his mental condition at the time in question, and was therefore properly received and submitted to the jury.

Exception was taken to hypothetical questions propounded on the part of the state to witnesses called as experts on the subject of insanity. The objections to these questions were threefold in their nature, namely, that the question so submitted and permitted to be answered failed to embrace substantially all the material facts in evidence relating to the subject on which the opinions of the witnesses were asked; that the questions embodied immaterial matters, which had no bearing on the mental condition of the accused, thereby misleading the jury into the belief that such immaterial evidence was relevant and important in determining the question of sanity; and, further, that the form of the questions was defective in failing to state clearly that all of the evidentiary facts covered by the questions were assumed as established for the purpose of eliciting the witnesses' opinions.

The questions thus attacked embraced a series of evidentiary facts adduced by the testimony, and are too long to permit of restatement in this place, but an examination of them shows that all the elements of the questions had been adduced in evidence, and that they are not subject to the criticism that they fail to assume as true the facts covered, nor as including matter immaterial to the inquiry which caused the jury to misapply or give improper consideration to some of the evidentiary facts.

The other objection, namely, that the hypothetical questions failed to embrace substantially all of the material facts relating to the subject upon which the opinion is asked is not well founded under the rules governing opinion testimony. The objection assumes that all material facts in evidence bearing upon the subject of the inquiry must be propounded to the expert. If this condition were enforced, it would be practically impossible to submit a hypothetical question when

the evidentiary facts on the subject are in conflict. The rule is that each party to the action may frame hypothetical questions embracing sufficient facts for the expert to form an intelligent opinion concerning the inquiry, upon the theory that there is credible evidence for the jury to pass upon in support of the assumption. The observations upon this subject in the opinion of *Zoldoske v. State,* 82 Wis. 580, 52 N. W. 778, explain the grounds of this practice:

"The rule in relation to hypothetical questions is that, if the facts upon which the hypothesis is based fall, the answer falls also (Whart. Cr. Ev. § 418) ; that an expert cannot be asked as to an hypothesis having no foundation in the evidence in the case, but may be asked his opinion of a similar case hypothetically stated; and it seems that counsel may assume the facts as they claim them to exist, if within the possible or probable range of the evidence." (Citing.)

We find no error in the questions objected to in the respects suggested.

Error is assigned upon the exclusion of testimony offered by the plaintiff in error, in two particulars:

(a) Upon motion the court struck out the testimony of Dr. Sauer in so far as he gave it as his opinion that plaintiff in error was afflicted with epilepsy in 1902. The doctor testified that he had an interview with the accused concerning the possibility of effecting a cure of epilepsy. At the time of this interview the accused was not suffering from an attack of epilepsy, nor had the witness ever seen him before, during or immediately after such an attack. The doctor then described in detail what the accused told him of the periodical occurrences of headaches, sharp pain, unconsciousness, muscular contractions, and a forgetfulness of events at such times, and concluded with the statement:

. "And so, from examining the man, and looking him over carefully so far as I could from his physical appearance at the time, I came to the conclusion that these were epileptic seizures, . . . and from the description I give I came to

the conclusion from the knowledge, in a general way, that the man was attacked by epileptic seizures, which was the diagnosis."

It will be observed the doctor wholly failed to state anything indicating what examination he made. We have no information showing that he did anything besides looking at the accused at the time of this, the only, interview on the subject between them. It is apparent that the doctor relied almost wholly upon the description given him by the accused of his past symptoms and experience with his affliction. Aside from observing the accused with his eye, a written description by the accused of his symptoms with a request for a prescription would have informed the doctor as fully as this personal interview. The evidence of witnesses who observed the accused for some time before the homicide as to physical indications of sickness is in such conflict that we have no reliable data to determine what the doctor observed when he testified that he examined him, in so far as he could, from physical appearances. It furthermore appears that some of the symptoms, such as appearances and sights in various colors, which the doctor testified were detailed to him by the accused as his symptoms, are not substantiated by any of the evidence in the case, thus leaving them unsupported by an oath, and only in the form of a narrative by the accused to a physician who never treated him.

We must hold the ruling of the trial court refusing to receive the doctor's opinion was correct upon the ground that the declarations of the accused to the doctor in describing the symptoms of former attacks were made when he was not suffering from the ailment of which he complained, from which the doctor never saw him suffer, and for which he never treated him; that the evidence does not show what examination the witness made of the accused at this interview; and for the further reason that these statements could not form the basis for a hypothetical question, since there is no other

evidence in the case of some of the symptoms detailed to the
doctor by the accused and taken into consideration by him in
giving his opinion. *Abbot v. Heath,* 84 Wis. 314, 54 N. W.
574; *State v. Dunn,* 179 Mo. 95, 77 S. W. 848.

(b) It is further complained that the court erred in refus-
ing to receive the testimony of Drs. Earles and Lemon, after
the state rested its case in defense of the special issue, as to
the effect of the injury to the bone over the eye of accused in
causing epilepsy. The court excluded the evidence upon the
ground that the subject had been covered by him in making
his case on the special issue, and was therefore not proper re-
buttal testimony. The accused, who had the affirmative of
the special issue, had gone fully into the question covered by
this testimony, and before resting his case had offered evi-
dence of this injury as an important fact and a cause of his
mental condition. The state met this case by offering proof
tending to show that his health and mind were not impaired,
including the result of an examination of the injury to this
bone by the state's experts. The course of the defense of the
state on the special issue developed nothing new in the inves-
tigation of this question requiring proof of a different nature
from that given affirmatively by the accused in the first in-
stance. The evidence offered by the state was of the same
nature as the proof submitted by the accused when the case
was with him, and was, in effect, a refutation of his case with-
out developing a new phase of the proof which entitled the
accused to a rebuttal. Under these circumstances, it rested
in the discretion of the trial court whether the evidence should
be received. No doubt it would have been proper to receive
it, but we cannot say that it was an abuse of discretion to re-
ject it. *McDermott v. C. & N. W. R. Co.* 85 Wis. 102, 55
N. W. 179; Abbott's Trial Brief, Crim. Causes, 339.

The next error assigned is that the jury was incompetent
to try the question of the guilt of the plaintiff in error after
having found him sane on the special plea of insanity. It is

asserted that the court held the jury qualified to try the main issue, under sec. 4699, Stats. 1898, and that such holding deprived the accused of the fundamental rights guaranteed him by the constitutions of the United States and the state of Wisconsin. The provisions of the federal constitution which are alleged to have been infringed are embodied in the fifth, sixth, and fourteenth amendments. Counsel for plaintiff in error present no argument nor authority indicating the grounds of this complaint for a violation of the federal constitution, but the suggestion seems directed to the provisions that the accused shall enjoy the right to a speedy and public trial by an impartial jury, and that persons shall not be deprived of life, liberty, or property without due process of law. The provisions of the fifth and sixth amendments, cited to our attention, have been repeatedly held not to limit the powers of the states in respect to the government of their own people, but were designed as restrictions on the powers of the national government in respect to the fundamental rights therein enumerated. *U. S. v. Cruikshank,* 92 U. S. 542; *Spies v. Illinois,* 123 U. S. 131, 8 Sup. Ct. 21, 22; *Maxwell v. Dow,* 176 U. S. 581, 20 Sup. Ct. 448, 494. The guaranty furnished by the fourteenth amendment, invoked by counsel, has been construed to add nothing to the rights of one citizen as against another. It simply furnishes an additional guaranty against any encroachment by the states upon the fundamental rights which belong to every citizen as a member of society. *U. S. v. Cruikshank, supra.* The rights secured to every citizen by this amendment, and which the accused seeks to invoke, are embraced in sec. 7, art. I, of the state constitution, which provides that:

"In all criminal prosecutions, the accused shall enjoy the right . . . to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed."

It is contended that the court's ruling under sec. 4699, Stats. 1898, violates the rights secured to the accused by this

article.  It is conceded by counsel that this section of the statutes was considered and construed in *Bennett v. State,* ᵖ57 Wis. 69, 14 N. W. 912, as to its validity in prescribing a special issue and the procedure thereunder where it is claimed the accused was insane at the time the offense was committed. But it is argued that the question whether the jury, after having passed upon the special issue of insanity and having found the defendant sane, was an impartial one to pass on the main issue of the trial, is not determined by that decision. The court considered and held that the procedure and pleading in a criminal action, as prescribed by this section for the trial of the special issue of insanity, was no infraction of the rights of the accused.  It is there said:

"It does not seem to us to deprive the accused of any of the incidents of a jury trial which can be regarded as tending to his protection.  Without pursuing the argument further, we are of the opinion that the law in question is a salutary law, and does not deprive the defendant of any constitutional right or privilege."

It was also determined that the trial of the special issue and the general issue upon the plea of not guilty were one trial of the action.  The consideration pressed in behalf of the plaintiff in error on this question is predicated upon the idea that the rights of the accused upon each issue raised by the pleadings were the same as upon two separate trials of the action.  But such is not the case.  The information and his plea thereto present the issues for the investigation by the court and the jury selected to try the case.  The order in which the inquiry upon the issues should proceed is a matter which may be regulated by the statute, and, if the course prescribed gives the accused the right to present his defenses fully upon the trial of the case, he is not deprived of any right or privilege incident to the common-law jury trial.

Upon these considerations it must be held that the accused was not entitled to have the jury dismissed after the trial of the special issue, and that the court proceeded properly in

directing the trial of the main issue before the same jury. Under the ruling in *Bennett v. State, supra,* it also follows that the accused was not entitled to re-examine the jury as to their qualifications to sit and try the remaining issues. The trial must be one continuous proceeding. The jury selected at its inception cannot be examined during the stages of its progress as to whether they have become prejudiced by what has taken place upon the trial before the court. The reasoning and the authorities submitted to sustain this claim are applicable to separate trials or proceedings, and not to different stages of the same trial.

The contention that the accused was prejudiced by the refusal to permit him to re-examine the jury as to their qualification to sit originally is untenable for the reason that nothing was brought to the court's attention showing that any juror had been guilty of misconduct upon his examination on *voir dire* or thereafter requiring that the jury be discharged and that the accused be put upon trial before another jury. No court would be warranted in taking such a procedure upon the trial on the mere suggestion that information had come to the defendant indicating that some one of the jurors was originally incompetent to sit on the case. As a basis for the court to act upon, such an extraordinary request should be accompanied by a clear and satisfactory showing of the facts upon which it is made. We find nothing of this kind in the record, and must hold that there was no error upon the ground of the court's refusal to grant the request for a re-examination of the jury. *Simmons v. U. S.* 142 U. S. 148, 12 Sup. Ct. 171.

It is complained that the court erred in denying a new trial upon the ground of prejudicial remarks made by counsel for the state during the trial. The alleged prejudicial remarks are collected in the printed "case," which has been examined in connection with the parts of the trial where they were made. This court has repeatedly considered the sub-

ject of such remarks of counsel upon the trial of cases, and we have been favored by counsel for both parties with an exhaustive collection of authorities. A recital at length of the remarks, which cover several printed pages, is not deemed necessary. They consist of comments, addressed to the court, upon questions propounded or testimony sought to be elicited upon the trial, and comments by way of argument upon the evidence to the jury. We find in most instances where exception was taken to remarks made to the court that the jury were carefully and fully admonished not to give any consideration to what was stated within their hearing. Those portions of the argument by the district attorney which were excepted to and were deemed improper by the court the jury were instructed to disregard. Other comments excepted to were permitted as properly within the sphere of counsel in presenting the case to the jury. We think the court took the proper and necessary steps to correct any prejudice that might have been occasioned had the court approved of what are alleged as exceptionable remarks. Those approved by the court we think were unexceptionable as within the rules announced in *Fertig v. State,* 100 Wis. 301, 75 N. W. 960.

Another error assigned is that the jurors Schwiebinger and Guenther were partial, and biased, and incompetent to sit upon the case. This contention is based upon affidavits of Fred Zweifel and Edward Staedler as to the juror Schwiebinger. They state that this juror had expressed his prejudice and opinion against the accused. If the facts were established that the juror was so prejudiced, it would furnish ground for a new trial. A person put upon trial for a criminal offense has a right to a fair and impartial jury to determine the issues. On application to set aside a verdict upon the ground of the prejudice of a juror, courts have required that the fact should be satisfactorily established, so that courts would not put verdicts in peril of being held invalid upon slight charges of misconduct or disqualification of

jurors. This juror made affidavit denying the interview, and on *voir dire* stated that he was free from bias and prejudice in the case.

The affidavit of M. J. Hannifin and that of Wm. J. Elsner charge that the juror Guenther expressed his prejudice and opinion of the guilt of the accused in their presence on the day he was summoned as a juror. Upon examination on *voir dire* he stated fully and explicitly that he had read of the case, but that he had not formed nor expressed an opinion upon it; that he had no prejudice against defendant, and was not conscious of any reason why he could not sit in the case and render a fair and impartial verdict. He made affidavit that he saw the two deponents whose affidavits charge him with having expressed his opinion against the accused before the trial at the place designated, but he states that he has no recollection of any such conversation as charged against him, and he reaffirms his statement that he was free from bias and prejudice when he was selected as juror.

The questions thus presented by the conflicting affidavits and the examination raised questions of fact to be passed upon by the trial court, whose findings sustained the credit and the statements of the jurors. Under such a showing we do not feel justified in holding his conclusions to be against the clear weight of the evidence before him. *Carthaus v. State,* 78 Wis. 560, 47 N. W. 629; *Bliss v. State,* 117 Wis. 596, 94 N. W. 325. These cases approved the practice that a juror's affidavit in denial of his prejudice may be received and considered by the court.

It is insisted that the court should have set aside the verdict, and granted a new trial to the accused, upon the fact that some of the jurors, during the course and progress of the trial, read certain articles published in Milwaukee papers, which it is claimed prejudiced their minds against him, and thus influenced their verdict in the case. One of the articles referred to was a newspaper statement in the Milwaukee

Herold, published in that city, of the reported shooting of a citizen in Milwaukee by some person then unknown. It was charged in the affidavit of the juror Robert Massman that one of the deputy sheriffs in charge of the jury read the article to deponent and other jurors, but that he did not discuss the subject with other jurors, nor did he hear it spoken of by them. The juror Matt Mollinger made oath that he heard the shooting affair spoken of by members of the jury. He further states that no newspaper articles were read to him or to the other jurors. Nine other jurors make affidavit stating that the article was not read by or to them as charged, nor did they hear any discussion of it. Some of the jurors stated that they heard some shooting affair mentioned but learned nothing of the particulars, and did not hear them discussed. Upon this state of the proof there is nothing to show that any juror was influenced or prejudiced by the newspaper article or other report of the affair.

The other charge of misconduct relates to the reading of an article in the Milwaukee Sentinel, published in that city, on the subject of "Feigning Insanity." In an affidavit of the juror Massman it is charged that he read this article on the morning of its publication, at the time the trial was in progress, and that he believed other jurors read it. In another affidavit he states that when he read the article he did not discuss its contents with other jurors, nor did he hear them discuss it, and that it in no way entered into and carried weight with him in considering the evidence and the case, though it made an impression on his mind and he deeply considered it. The article referred to a disclosure in New York City stating that insanity had been feigned in defenses to charges of capital offenses, thus furnishing a convenient avenue for the miscarriage of justice in such trials. The two deputy sheriffs in charge of the jury make affidavit that the issue of the Milwaukee Sentinel containing this article was not permitted nor seen in the possession of any juror.

Ten of the jurors make affidavit stating that they did not see, read, or hear of this article while serving on the jury, and that nothing transpired calling their attention to the fact that it had been published.

In addition to the matters presented in these affidavits, the trial court had a right to take into consideration the conduct and appearance of each juror, as witnessed by him throughout the trial, in determining whether the irregularity complained of justified the conclusion that the accused had been prejudiced in his rights, thus requiring that the verdict be set aside and a new trial be granted. The court found, upon the facts presented, that no improper influence had affected the verdict assailed on this motion; and, since this decision does not appear to be against the clear weight of the evidence, in any view the court may have considered the affidavit of the juror Massman, it will not be disturbed by this court. *Bliss v. State,* 117 Wis. 596, 94 N. W. 325.

Exception was taken to the following instruction to the jury upon the subject of insanity:

"It is said that the true test of the absence or presence of insanity is the absence or presence of delusions. An insane delusion is insanity, whether it is partial or general. An insane delusion, which may be partial insanity, must be mental and not moral; that is, it must not arise from degradation or passion, for that is mere moral insanity. There must be actual delusion, and it is also necessary that the acts should be immediately connected with the delusion."

One of the criticisms upon that instruction is that the test of insanity as therein defined is too restricted, and therefore misleading to the jury. We do not find the objection sustained when the other portions of the charge given in connection with it are considered. Preceding this paragraph, the court instructed the jury that:

"The term 'insanity,' as used in the special plea and issue of insanity made by the defendant, means such perverted condition of the mental and moral faculties as to render the

person incapable of distinguishing between right and wrong, or unconscious at the time of the nature of the act he is committing;" and further: "The term 'insanity' is broad enough to include every species of mental aberration or disease of the mind."

Following the instruction excepted to, the court submitted this instruction upon the same subject:

"If you find from the evidence that at the time of the alleged commission of the offense the defendant was suffering from mental aberration or sickness of mind produced by any cause, and by reason thereof his judgment, memory, and reason were so perverted that he did not realize the nature and quality of the act he was doing, or that he did not realize that it was wrong, you must find that he was insane, and for that reason not guilty."

Construing the charge as a whole, and as the jury undoubtedly understood it, it cannot be said that the court unduly restricted the test of insanity; nor did it invade the province of the jury and declare to what inferences of fact proof of the insanity was to be limited. The jury were given the broadest latitude to find the fact of insanity if the accused was incapable of distinguishing between right and wrong, by reason of a perversion of his mental and moral faculties, or if he was thereby rendered unconscious of the nature of the act. They were informed that, if any mental aberration or sickness of the mind, produced by any cause, perverted his judgment, memory, and reason so as to render him incapable of realizing the nature and quality of the act, or that it was wrong, then they must find him insane and not responsible for the act. The instructions were sufficient to cover the whole evidence, and were not so framed as to unduly limit the jury in the consideration of all the evidence in the different favorable aspects as contended for by the plaintiff in error.

If the instructions be given the more limited interpretation contended for by counsel for the accused, it cannot be said to be prejudicial under the evidence. It is undisputed

in the case that when the carriage stopped on the street before the home of accused he immediately appeared upon the scene, equipped with a revolver, came to the window of the carriage door, and when he discovered the parties sitting in the carriage made the inquiry, "Who are you?" and fired the shot which killed Mr. Reul. The accused testifies he remembers nothing of going to the street, seeing the carriage or persons in it, or of firing the revolver. These facts must impress the mind that such acts on his part could not be the result of an unconscious or automatic state, but had underlying them some object which he purposed to fulfill. If the purpose was the product of an insane mind, as claimed by the accused, it must have been accompanied by a delusion or false belief of injury of some kind, which spurred him on to commit the deed. The facts and circumstances refute the inference that the shooting was the result of an accident, or was done while the accused was in a state of unconsciousness, but show that the accused had the power to perceive and direct his acts to a purpose. Taking either view of the instruction excepted to, we perceive no error in submitting it to the jury.

We have examined the alleged errors brought to our attention, and upon a careful examination of the record we find nothing to show that the court committed error, and find that the accused had a fair and impartial trial.

*By the Court.*—Judgment affirmed.

Upon a motion for rehearing there was a brief signed by *Henry J. Killilea,* attorney, and *W. B. Rubin,* of counsel, and a separate brief by *F. C. Winkler,* of counsel, for the plaintiff in error.

For the defendant in error, in opposition to the motion, there was a brief by the *Attorney General* and *L. H. Bancroft,* first assistant attorney general.

The motion was denied September 27, 1904.