STATE, RESPONDENT, v. CROWE, APPELLANT.

(No. 2,658.)

(Submitted May 8, 1909.   Decided May 25, 1909.)

[102 Pac. 579.]

*Criminal Law—Assault in First Degree—Insanity—Erroneous Instructions—Burden of Proof— Verdict—Witnesses—Cross-examination—Degrading Character—Hypothetical Questions.*

Criminal Law—Cross-examination—Witnesses—Degrading Character.
1.   The court erred in overruling objections of defendant, charged with crime, to questions asked his (defendant's) brother by the county attorney, on cross-examination, whether he was the same Pat Crowe who had been connected with the Cudahy kidnaping, and whether he had not been more or less directly implicated in other offenses of like character. The questions had a tendency to degrade and discredit the witness. (MR. JUSTICE SMITH dissenting.)

Same.
2.   It was also error to permit the witness above referred to, to be asked on cross-examination whether he knew of his brother, the defendant, ever having been involved in difficulty or been defendant in a criminal proceeding before.

Same—Insanity Preceding Offense—Evidence—Discretion.
3.   Where the defense relied on by one charged with crime is insanity, the length of time preceding the offense to which inquiry relative to defendant's mental condition may be directed is a matter addressed to the sound legal discretion of the trial judge, subject to review for abuse of such discretion only.

Same—Insanity—Evidence—Admissibility.
4.   A lay witness having testified that in his opinion defendant was of unsound mind at the time the offense charged was committed, it was proper to ask him on cross-examination whether he thought defendant had sufficient mental capacity to distinguish between right and wrong and would know that it was wrong to shoot a man, or steal or commit burglary.

Same.
5.   The witness mentioned in paragraph 4, above, having answered the question in the affirmative, he should have been allowed on redirect examination to give his opinion as to whether defendant, if he knew it was wrong to do the things enumerated, had sufficient mental capacity to do right and avoid wrong; since defendant could not have anticipated the extent of the cross-examination, and therefore could not, in his direct examination, cover every possible phase of insanity which might be opened to inquiry.

Same—Insanity—Irresistible Impulse.
6.   Where defendant on trial for crime relies on the defense of insanity, the question of irresistible impulse is a proper subject of inquiry.

Same—Hypothetical Questions—Contents.

7.   A hypothetical question on the subject of defendant's insanity need not embrace all the evidence given relating to his mental condition.

Same—Insanity—Instructions—Burden of Proof.

8.   In instructing the jury in a criminal action that the defense of insanity "is to be weighed fully and justly, and, *when satisfactorily established,* must recommend itself" to their favorable consideration, etc., the court impliedly cast the burden of satisfactorily establishing that defense upon the defendant, and therefore committed error.   (MR. JUSTICE SMITH dissenting.)

Same—Insanity—Disparagement of Defense by Court—Erroneous Instruction.

9.   It was also error to instruct that the jury should examine the defense of insanity "with care, lest an ingenious counterfeit of such mental disease or disorder should furnish protection to guilt."   The defendant is entitled to make any defense recognized by the law and have it submitted without disparagement by the court.   (MR. JUSTICE SMITH dissenting.)

Same—Insanity—Instructions—Burden of Proof.

10.   An instruction that, before the jury could acquit upon the ground of insanity, they must find defendant was laboring under such a defect of reason from disease of the mind as to not know—that is, as not to have sufficient mental capacity to know—the nature and quality of the act he was doing, or, if he did know it, that he did not know he was doing wrong, and one which declared that, before acquittal could be had on that ground, it must appear that defendant was affected with insanity to such a degree as to create an uncontrollable impulse to do the act charged by overriding his reason and judgment, while not inconsistent when viewed in the light of the whole charge, were so vague in language that the jury might reasonably have inferred from them that defendant had the burden of establishing his insanity.

Same—Insanity—Reasonable Doubt.

11.   The court further erred in charging the jury that it was for them to say whether the evidence, as a whole, convinced them of defendant's insanity, *or* raised in their minds a reasonable doubt on the subject. The instruction was objectionable because couched in the alternative. The only matter which should have been submitted for their determination was whether the evidence as a whole raised a reasonable doubt of defendant's sanity.

Same—Insanity—Verdict of Acquittal—Form.

12.   Where defendant, charged with assault in the first degree, relied wholly upon the defense of insanity, the court's instruction that they might find defendant guilty of assault in the first, second or third degree, or not guilty was inaccurate; the jury should have been told that, if they found him not guilty because insane, their verdict should be "not guilty by reason of insanity."   (Revised Codes, sec. 9322.)

*Appeal from District Court, Yellowstone County; Sydney Fox, Judge.*

ANTHONY J. CROWE was convicted of assault in the second degree and appeals. Reversed and remanded for new trial.

*Messrs. Hatthorn & Brown,* for Appellant.

A layman may be permitted to testify as to the sanity or insanity of a defendant, he first having detailed the facts upon which he bases his conclusion. (*State* v. *Schuff,* 9 Idaho, 115, 72 Pac. 664; *Connecticut M. L. Ins. Co.* v. *Lothrop,* 111 U. S. 612, 28 L. Ed. 536; *Holland* v. *Zollner,* 102 Cal. 633, 36 Pac. 930; *Burt* v. *State,* 38 Tex. Cr. 397, 40 S. W. 1000, 43 S. W. 344, 39 L. R. A. 305; *People* v. *Young,* 151 N. Y. 210, 45 N. E. 460; Elliott on Evidence, 681, and cases cited.)

A witness is entitled to be examined and give his testimony without having questions propounded to him which tend to degrade him or lower him in the estimation of the jury. (*State* v. *Rogers,* 31 Mont. 1, 77 Pac. 293; *State* v. *Gleim,* 17 Mont. 17, 52 Am. St. Rep. 655, 41 Pac. 998, 31 L. R. A. 294; *People* v. *Un Dong,* 106 Cal. 83, 39 Pac. 12; *People* v. *Wells,* 100 Cal. 459, 34 Pac. 1078; *Gale* v. *People,* 26 Mich. 161; *People* v. *Cahoon,* 88 Mich. 456, 50 N. W. 384; *Leahy* v. *State,* 31 Neb. 566, 48 N. W. 390; *State* v. *Trott,* 36 Mo. App. 29.)

An expert witness has a right to express his opinion as to the sanity or insanity of a person from the facts propounded in the hypothetical question. (*State* v. *Schuff, supra; Lowe* v. *State,* 118 Wis. 641, 96 N. W. 417; 2 Elliott on Evidence, sec. 1116.)

The object of all questions to experts should be to obtain their opinion as to matters of skill and science which is in controversy, and at the same time to exclude their opinions as to the effect of evidence in establishing controverted facts. (2 Elliott on Evidence, sec. 1116; *Kerr* v. *Lunsford,* 31 W. Va. 659, 8 S. E. 493, 2 L. R. A. 668; *Pyle* v. *Pyle,* 158 Ill. 289, 41 N. E. 999; *Hunt* v. *Lowell Gaslight Co.,* 8 Allen (Mass.), 169, 85 Am. Dec. 697.)

*Mr. Albert J. Galen,* Attorney General, and *Mr. E. M. Hall,* Assistant Attorney General, for Respondent.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The defendant was convicted of assault in the second degree, and appeals from the judgment and from an order denying him a new trial.

1. Upon the cross-examination of Pat Crowe, a brother of the defendant and a witness in his behalf, he was asked by the county attorney: "Are you the same Pat Crowe who was connected with the Cudahy kidnaping in Omaha?" And again: "You have been more or less directly connected with other offenses of the same character for the past eighteen years, have you not?" To each of the questions counsel for the defendant objected, but the objection was overruled. In each instance the ruling was erroneous. Sections 8030 and 8031, Revised Codes, provide:

"Sec. 8030. A witness must answer questions legal and pertinent to the matter in issue, though his answer may establish a claim against himself; but he need not give an answer which will have a tendency to subject him to punishment for a felony; nor need he give an answer which will have a direct tendency to degrade his character, unless it be to the very fact in issue, or to a fact from which the fact in issue would be presumed. But a witness must answer as to the fact of his previous conviction for felony.

"Sec. 8031. It is the right of a witness to be protected from irrelevant, improper or insulting questions, and from harsh or insulting demeanor; to be detained only so long as the interests of justice require it; to be examined only as to matters legal and pertinent to the issue."

Sections 8024 and 8025 provide the method of impeaching a witness. Section 8024 provides that a witness may not be required to give evidence of particular wrongful acts, except that it may be shown by his examination, or the record of the judgment, that he has been convicted of a felony. The provisions of section 8025 have no reference to the matter now before us.

In view of these provisions of law it is immaterial what rule may prevail in other states where the common law is, or different statutes are, in force. "In this state there is no common law, in any case where the law is declared by the Code or the statute." (Section 8060.) "The Code establishes the law of this state respecting the subjects to which it relates." (Section 8061.)

But it is suggested by counsel for the state that a wider latitude is allowed in the cross-examination of an ordinary witness than is permitted in the cross-examination of the defendant in a criminal case, and Wigmore on Evidence, sections 979-986, is cited in support of this contention. That rule may apply in other jurisdictions, but it does not in this state. In *State* v. *Schnepel,* 23 Mont. 523, 59 Pac. 927, this court said: "When a defendant is sworn, and testifies in his own behalf, he is subject to the same rules of cross-examination and impeachment as any other witness." In *State* v. *Rogers,* 31 Mont. 1, 77 Pac. 293, a similar question arose. Joe Rogers was on trial for burglary. His brother, Pat Rogers, was a witness in his behalf, and testified about a trip taken to Storm Lake by way of Cable. On cross-examination Pat Rogers was questioned about his purchase of a Lee straight-pull rifle, and was then asked: "Is it not a fact that when you went to Cable—when you took that trip— that your object was to find out when the bullion was to be shipped from Cable?" And again: "Now, Mr. Rogers, didn't you get that Lee straight-pull rifle for the purpose of holding up the bullion that was going from the Cable mine?" Speaking of that character of cross-examination, this court said: "A witness, whether the accused or any other witness, may be discredited in any of the various ways named in the statute or sanctioned by law, but it is not permissible to ask any witness any question merely for the purpose of degrading him. It is the right of a witness to be protected from irrelevant, improper, and insulting questions (section 3402, Code of Civil Procedure), and he need not give an answer which will have a tendency to subject him to punishment for a felony, or to degrade his character, unless it be to the very fact in issue, or to a fact from

which the facts in issue would be presumed. (*Id.*, sec. 3401.) These questions were totally foreign to the matter before the court, and could have no bearing whatsoever on the guilt or innocence of the defendant of the crime with which he was accused by the information. They could therefore subserve no purpose whatsoever, except to degrade and discredit the witness and his brother, the defendant, in the eyes of the jury''—and for that error alone the judgment was reversed, and the holding of the trial court with respect to the cross-examination of Pat Crowe must, for the same reason, be held to be reversible error. For the same reason the following questions, asked the witness Pat Crowe, ought not to have been permitted to be answered: ''Do you know, Mr. Crowe, of your brother, the defendant, ever having been involved in a difficulty of this kind before?'' And again: ''Do you know of your own knowledge, Mr. Crowe, as to whether or not your brother, during the time you have known him, has ever been a defendant in any criminal proceedings before?''

2. The defense relied upon was insanity. Pat Crowe was interrogated with reference to the mental condition of his brother, but was prevented from expressing an opinion as to whether his brother was sane or insane at the time the alleged offense was committed, or at the times the witness had known him. The evidence is very indefinite as to the length of time which had elapsed since the witness had known anything of his brother; and, while the law does not fix any limit of time within which the inquiry as to the mental condition of one accused of crime is to be directed, the rule most generally recognized appears to be to refer the matter to the sound legal discretion of the trial court, subject to review for abuse of such discretion only. (1 Wigmore on Evidence, sec. 233.) We do not think that the record discloses any abuse of discretion in this instance.

3. Neither are we prepared to say that the remarks of the trial judge to the witness Le Masters were of such character as to constitute reversible error. (Revised Codes, sec. 9415.)

4. Le Masters was a witness for the defendant, and in his direct examination testified to his acquaintance with the defendant, his observations of defendant's conduct, and gave as his opinion that the defendant was of unsound mind at the time the alleged offense was committed. On cross-examination he was asked if he thought the defendant had sufficient mental capacity to distinguish between right and wrong, and, further, if he thought defendant would know it was wrong to shoot a man or steal or commit burglary. The witness answered: "I believe that he knew in his own mind that it was wrong to do any of those things." On redirect examination the witness was asked his opinion as to whether the defendant, if he knew it was wrong to do these things, had sufficient mentality or mental capacity to do right and avoid wrong. This was objected to as not proper redirect examination, and the objection was sustained. It is now urged that the cross-examination of the witness was improper, but with this we do not agree. It tended to show the mental capacity of the defendant to distinguish between right and wrong generally, and also in particular instances. But we think the court erred in refusing to permit the question asked the witness on redirect examination. The defendant could not have anticipated the extent to which counsel would go in the cross-examination, and therefore on direct examination could not cover every possible phase of insanity which might be opened to inquiry, and certainly irresistible impulse is a proper subject of inquiry in insanity cases. This court has repeatedly so held. (*State* v. *Peel,* 23 Mont. 358, 75 Am. St. Rep. 529, 59 Pac. 169; *State* v. *Keerl,* 29 Mont. 508, 101 Am. St. Rep. 579, 75 Pac. 362.)

5. Dr. Lindsey was called by the defendant as an expert witness on the subject of insanity, and to him was propounded a hypothetical question in which was recited much of the testimony relating to defendant's family history, and to his own habits and history. The county attorney objected to the question, on the ground that it did not embrace all the testimony given tending to show the mental condition of the defendant.

The court having intimated its views, counsel for defendant then inquired of the court whether it would hold that it was necessary to incorporate in one hypothetical question all such testimony, and the court ruled that it would be necessary for counsel to do so. This ruling is assigned as erroneous. In *State* v. *Peel,* above, this court considered the question in a somewhat different aspect. To the hypothetical question propounded to a witness for the state counsel for defendant objected, "on the ground that the hypothesis assumed that the defendant entertained a grudge against deceased, and that he was lying in wait for deceased at the time of the homicide, an assumption not justified by the proof, and also on the ground that it involved an erroneous statement of the law of insanity as a defense in criminal prosecutions." Considering an exception taken by the defendant to the order of the court overruling the objection, this court said: "The state's theory of the case was that defendant was, and is, so far a reasonable moral agent as to be responsible under the law. Upon this assumption counsel were proceeding, and it was necessary that they be allowed to proceed in this way in order to properly try the case. In putting the hypothetical question to the expert they had a right to assume as established, for the time being, all the facts in evidence tending to support their theory. It was a legitimate inference from the evidence, under this theory, that the defendant retained a grudge against the deceased, and that, prompted by a desire to gratify his feelings of revenge, he lay in wait for the opportunity to strike the fatal blow. It was for the jury to say, after considering all the evidence introduced by both sides, whether the facts, thus assumed as established for the time being, were really established, and whether the opinion of the witness was worthy of consideration. (Lawson on Expert Evidence, 152, 153; 1 Thompson on Trials, secs. 607-610, and cases cited.) Counsel were not compelled to so frame their question as to embrace in it a statement of all the elements of the law of insanity."

The authorities appear to be practically unanimous in holding that a hypothetical question need not embrace all of the evidence respecting the defendant's mental condition. In *Davidson* v. *State*, 135 Ind. 254, 34 N. E. 972, the supreme court of Indiana, in considering the identical question now before us, said: "As to the second objection it would seem to be sufficient to say that it was not necessary that the hypothetical questions propounded to the witnesses should embrace all the facts proven upon the particular subject under investigation. In the examination of expert witnesses counsel may embrace in his hypothetical question such facts as he may deem established by the evidence; and, if opposing counsel does not think all the facts established are included in such question, he may include them in questions propounded on cross-examination. Any other course would result in endless wrangles over the question as to what facts were, and what facts were not, established. (*Goodwin* v. *State*, 96 Ind. 574; Rogers on Expert Testimony, 39; *Stearns* v. *Field*, 90 N. Y. 640.)" To the same effect is *Schissler* v. *State*, 122 Wis. 365, 99 N. W. 593. (Lawson on Expert and Opinion Evidence, p. 260, subrule 1.)

6. Instruction No. 30, given by the court, reads as follows: "You are instructed that the defense of insanity is one which may be, and sometimes is, resorted to in cases where the proof of the overt act is so full and complete that any other means of avoiding and escaping punishment seems hopeless. While, therefore, this is a defense to be weighed fully and justly, and, when satisfactorily established, must recommend itself to the favorable consideration of the humanity and justice of the jury, they are to examine it with care, lest an ingenious counterfeit of such mental disease or disorder should furnish protection to guilt." At an early date this instruction was approved in Indiana and California, but lately it has been distinctly disapproved in each state.. (*Aszman* v. *State*, 123 Ind. 347, 24 N. E. 123, 8 L. R. A. 33; *People* v. *Methever*, 132 Cal. 326, 64 Pac. 481.) The instruction is held to be erroneous in *State* v. *Shuff*, 9 Idaho, 115, 72 Pac. 664. In our opinion, there

are two insuperable objections to the instruction: (1) It casts upon the defendant the burden of satisfactorily establishing his insanity. The phrase "this is a defense to be weighed fully and justly, and, when *satisfactorily established,* must recommend itself," etc., cannot have any other meaning. The state is never required to satisfactorily establish the defense of insanity; so the jury must have understood that it was incumbent upon the defendant to do so. This is the law in some of the states, but is not the rule here. The question was fully considered, and argument upon it foreclosed, in the *Peel* and *Keerl Cases* above. (See, also, *Davis* v. *United States,* 160 U. S. 469, 16 Sup. Ct. 353, 40 L. Ed. 499.) (2) The instruction is a disparagement of the defense of insanity; and, when the jury are told to examine it with care, lest an ingenious counterfeit of such mental disease or disorder should furnish protection to guilt, their suspicions must have been at once aroused as to the merits of such a defense in any case. Instructions of this character have been condemned frequently, and ought never to be given. (*Dawson* v. *State,* 62 Miss. 241; 2 Thompson on Trials, sec. 2433; *Aszman* v. *State,* above.) The defendant is entitled to make any defense recognized by the law, and to have it submitted without disparagement by the court. (12 Cyc. 618.)

7. In Instruction 33 the court told the jury that, before they could acquit the defendant upon the ground of insanity, they must find that the defendant was "laboring under such a defect of reason from disease of the mind as to not know—that is, as not to have sufficient mental capacity to know—the nature and quality of the act he was doing, or, if he did know it, that he did not know he was doing wrong." In Instruction 28 the jury were told that, before they could acquit the defendant on the ground of his insanity, it must appear that the defendant was "affected with insanity to such a degree as to create an uncontrollable impulse to do the act charged by overriding his reason and judgment." While these separate statements might, at first blush, seem to be inconsistent, they are

not so in fact; and the jury having been told that they were to consider the charge as a whole, criticism upon the ground of their inconsistency cannot be urged, but from the vague language employed in each of them, the jury might reasonably have inferred that the burden was upon the defendant to establish the fact of his insanity. The same thing may be said of Instruction 34, given. There the court, among other things, said: "And it is for you, and you alone, to say whether or not the evidence introduced in this case as a whole convinces you of the *defendant's insanity,* or raises in your mind a reasonable doubt as to his sanity." The question ought not to have been submitted to the jury in the alternative form; for the only matter for their determination was as to whether the evidence as a whole raised a reasonable doubt of defendant's sanity. The *Peel* and *Keerl Cases,* above, are ample authority in support of appellant's contention.

8. Instruction 36, given, is not accurate. It informed the jury that they might find either of four verdicts: "(1) Guilty of assault in the first degree; (2) guilty of assault in the second degree; (3) guilty of assault in the third degree; (4) not guilty." Section 9322, Revised Codes, provides: " * * * When the defendant is acquitted on the ground that he was insane at the time of the commission of the act charged, the verdict must be 'not guilty by reason of insanity.' * * * " Since the defendant was relying upon the defense of insanity, the jury should have been told that they might find the defendant not guilty by reason of insanity.

We have not considered all the assignments, but think the foregoing sufficient for the purpose of a retrial of this case.

The judgment and order are reversed, and the cause is re- . manded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE SMITH: I do not think the error first discussed by Mr. Justice Holloway was sufficiently prejudicial to warrant

a reversal.   Neither do I think the court's admonition to the jury touching the defense of insanity was, in itself, reversible error.   In other respects I concur in the disposition made of the case.