BLISS, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 27—April 17, 1903.*

*Criminal law and practice: Counsel to assist district attorney:*
*County judge: Murder: Evidence: Declarations of deceased:*
Res gestæ: *Instructions: Verdict: Polling jury: Jurors: Previ-*
*ous expression of opinion: Manslaughter in fourth degree:*
*Cruel and unusual weapon.*

1. Secs. 2452, 2582, Stats. 1898, do not prohibit the appointment, under the provisions of sec. 750, of a county judge as counsel to assist the district attorney in the prosecution of a person charged with felony.

2. On the trial of a person charged with having caused the death of his wife by means of a lighted kerosene lamp which set fire to her clothing, testimony of their son that the deceased said defendant struck her with the lamp, is *held* to have been admissible, it sufficiently appearing that such statement was made, if at all, in the immediate presence of defendant.

3. A witness who arrived on the scene within a very few moments after the breaking of the lamp, while fire was still smoldering in a curtain and in some clothing, defendant being in an adjoining room with the door open, testified that deceased said to her when she first came in: "See what he has done now! Struck me with a lamp." *Held*, that this remark or exclamation was admissible as a part of the *res gestæ.*

4. After stating that the information charged that the defendant, on January 30, 1902, "in this city and county, from premeditated design to effect the death of [deceased] did feloniously 'kill and murder said" deceased, and that defendant pleads not guilty to the charge, the court charged the jury: "That [the deceased] died at the time and place and under the circumstances mentioned on the 31st day of January last, are facts that are not contested on the part of the defendant." It was evident from the immediately succeeding clauses of the charge, and the jury must have understood, that the court did not intend to convey the idea that the death was proven to be due to any act of defendant, but was merely referring to the admitted facts that the deceased was severely burned as the result of the breaking of a lamp on the night in question and that she died soon after. *Held* that, although the charge was unfortunately worded, there was no error.

5. To inform the jury, on a trial for murder, of the penalties fixed by statute for the various degrees of murder and manslaughter,

is bad practice; but whether it would necessarily work a reversal is not determined.

6. Upon polling the jury, one juror answered that it was his verdict with a provision, and that the agreement was that the jury ask for the clemency of the court on behalf of the prisoner. Upon being asked again whether the verdict was and still is his verdict, he answered unconditionally in the affirmative. *Held*, that it was proper to receive the verdict.

7. The question, raised upon a motion for a new trial, whether a juror had expressed an opinion before the trial and hence was disqualified, is one of fact for the trial court, and its decision, unless contrary to the weight of the evidence, will not be disturbed by this court.

8. The killing of a person by means of a lighted kerosene lamp full of oil cannot be manslaughter in fourth degree as defined in sec. 4362, Stats. 1898, since such lamp must be considered a cruel and unusual weapon.

9. Where, upon the evidence of defendant on a trial for murder, the jury might have concluded that the lamp which caused the death of deceased was accidentally struck by defendant's cane when he was throwing up his hands under the supposition that the deceased, who held the lamp, was about to strike him with it, but that as matter of fact he was not justified in so supposing, and that hence his act in throwing up his cane was not justifiable or excusable, but was culpably negligent, the question whether defendant was guilty of manslaughter in the fourth degree under sec. 4363, Stats. 1898, should have been submitted to the jury.

ERROR to review a judgment of the circuit court for Columbia county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

The plaintiff in error was prosecuted for the murder of his wife, Kate Bliss, convicted of manslaughter in the third degree, and seeks to reverse said conviction and the sentence passed thereon upon writ of error. It appeared upon the trial that the plaintiff in error was married to the deceased, Kate Bliss, in January, 1868, and that the parties had resided together in the city of Portage for twenty-two years immediately preceding the tragedy; that the plaintiff in error was a soldier in the army, and was lame as the result of rheumatism; that his business was and is writing music and playing in orchestras and bands; that the parties had two

sons, named Frank and Vincent, Frank being married and living immediately across the street from the residence of the plaintiff in error, and Vincent being a boy thirteen years of age and living at home; that on the night of January 29, 1902, the plaintiff in error had been playing at a dance in Portage, and returned home some time between twelve and one o'clock, and that his wife was partly dressed at the time, and that a lamp was burning in the sitting room; that some talk took place between the parties, and that in some manner the kerosene lamp was broken and the oil therein was thrown upon the person of the deceased, Kate, and caught fire, making serious burns upon her person, as the result of which fire and shock she died about twenty-four hours later. There were no witnesses who saw the transaction except the parties themselves. The plaintiff in error testified in substance that when he came into the house his wife asked him for the money he had made playing, and when he told her that he had no money at that time she told him he would have to go; that she stood in the dining room near the door going into the kitchen, and that he stood the other side of the door and in the kitchen, and that she said, "Are you going?" and he said, "Yes," and she said, "Well, then, take that," and struck at him, and had the lamp up in her hand, and whether she fell forward or not he did not know, but that he threw up both of his hands and turned his head away quick with his cane in his hand, and just then there was a flash and she was all afire, and that he did not know whether he struck the lamp or his cane struck it; that her head and hair caught fire, and he screamed for Vincent; that Vincent came running from his room, and he told him to get a quilt, which Vincent did, and he (the plaintiff in error) grabbed it, and threw it over the head of the deceased and put out the fire; that while Vincent was gone for the quilt he was trying to keep the fire from burning her face, in which attempt he burned his hands and face; that Vincent

ran over across the street and wakened his son Frank's wife, who came right over. There was some testimony to the effect that the deceased said to Vincent and to Frank's wife, in effect, that the plaintiff in error struck her with the lamp; there was also evidence of admissions made by the plaintiff in error which it was claimed by the state tended to show that the plaintiff in error had told different stories as to the transaction from that which he told upon the trial.

*Daniel H. Grady,* for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General* and *Walter D. Corrigan,* second assistant attorney general, and oral argument by *W. S. Stroud* and *Mr. Corrigan.*

WINSLOW, J.  A number of exceptions were taken to the rulings of the trial court, and such of them as are deemed of material importance will now be briefly considered.

1. Before the trial began the court appointed Hon. W. S. Stroud, county judge of Columbia county, as counsel to assist the district attorney in the prosecution, by virtue of the provisions of sec. 750, Stats. 1898, which provides that circuit courts may in their discretion appoint counsel to assist the district attorney in the prosecution of persons charged with crime punishable by imprisonment in the state prison.  To this action the plaintiff in error filed a written objection on the ground that Mr. Stroud was disqualified from acting in that capacity because he held the office of county judge.  This objection was overruled, and Mr. Stroud participated in the prosecution, and this ruling is claimed to constitute error. This objection must be overruled.  While our statutes prohibit the judge of a circuit court from acting as attorney or giving advice in any matter which he has reason to believe will be brought before any of the courts of the state (sec. 2582, Stats. 1898), there is no such general or sweeping pro-

vision with relation to county judges, but, on the contrary, they are simply prohibited from giving advice to litigants in any matter pending before them or which they have reason to believe will be brought before them for decision, or drafting papers in such proceeding, except as expressly authorized by law (sec. 2582, Id.); also from being retained as attorney or counsel in any matter which may depend on or relate to any judgment made by them; also from acting as attorney or counsel for any executor, administrator, trustee, or guardian appointed within their jurisdiction in any action brought by or against such officer or relating to his official conduct. (sec. 2452, Id.). As to other legal proceedings or matters pending in any court, the county judge, if he be an attorney at law, is allowed to practice his profession without hindrance, and such has been the general practice during the entire history of the state. An attorney appointed by the court to assist the district attorney in the prosecution of crime does not thereby become the district attorney; he simply represents the state in that prosecution by appointment of the court, and he must be admitted to the bar by the courts of this state. *State v. Russell,* 83 Wis. 330, 53 N. W. 441. The trial of the prosecution for murder was not a proceeding within any of the prohibitions above referred to; hence Judge Stroud, being a member of the bar of this state, might properly be appointed to assist the district attorney therein.

2. The thirteen-year old son Vincent, who was asleep in an adjoining room when the lamp was broken, and came upon the scene while the deceased was in flames, and then got a quilt which the plaintiff in error used in extinguishing the fire, was called as a witness by the state. He described the situation as it appeared when he entered the room, and told of his getting the quilt and giving it to his father, and that his father told him to run over and get Flossie (the wife of the elder son, Frank), and that he went after Flossie barefooted and in his underclothing. He was then asked whether,

after he got the quilt and his father and mother were stand-
ing there, his mother told how it happened, and he answered:

"I don't know whether it was then. I think it was her that
told me—that it was him that told me to go over and tell.
But I think she said— I don't know what it was, but I
think she said he struck her with the lamp."

Counsel for the plaintiff in error then moved to strike out
the answer because the remark was not shown to have been
made in the presence of the defendant, but the motion was
overruled and exception taken. The boy then stated: "I
went right across the street *then*. Flossie is Frank's wife.
I went right across the street for her without waiting to put
on my shoes and stockings." Later in his testimony he said:
"I did not attempt to put out the fire on my mother; as quick
as I got out there I ran right over for Flossie." It might
perhaps well be claimed from the entire testimony that the
mother's remark was a part of the *res gestœ,* it appearing
that it was made, if at all, while the fire was yet burning;
but, irrespective of this question, we think it satisfactorily
appears that if it was made at all it was made in the imme-
diate presence of the plaintiff in error, because the boy says
that *then* he ran after his sister, and it appears by both the
boy's testimony and by the father's testimony thereafter given
that the plaintiff in error was with the mother trying to put
out the flames all the time up to the time the boy ran across
the street. The ruling of the court was plainly right.

3. A more serious question is presented as to a somewhat
similar ruling which occurred during the testimony of the
witness Flossie Bliss. It appears that she ran across the
street in her nightclothes, upon being called by Vincent, and
that when she arrived at the house the deceased was sitting
in the northeast corner of the sitting room, about ten or
twelve feet from the door into the kitchen, which was open,
and that the plaintiff in error was in the kitchen; that the
flames upon the deceased were fully extinguished, but there

was some fire in some clothing in the kitchen, and a little fire
smoldering in a curtain in the sitting room, which she put
out; that she did not know whether plaintiff in error could
hear what was said by Mrs. Bliss, but that Mrs. Bliss said to
her, when she first came in: "See what he has done now!
Struck me with a lamp." Proper objection was made to the
reception of this testimony, and the question is whether it
was properly received.

It was not admissible as a dying statement, because there
is nothing to show that the deceased either was or supposed
that she was *in extremis* at the time.    We think, however,
within the decisions of this court, especially in the cases of
*Hooker v. C., M. & St. P. R. Co.* 76 Wis. 542, 44 N. W.
1085, *Hermes v. C. & N. W. R. Co.* 80 Wis. 590, 50 N. W.
584, and *Christianson v. Pioneer F. Co.* 92 Wis. 649, 66
N. W. 699, the remark may properly be considered as a part
of the *res gestæ.*   It is not always easy to determine when re-
marks of parties are to be considered as part of the *res gestæ.*
The general principle is well understood that exclamations
made contemporaneously with the main fact under investiga-
tion, and which evidently spring therefrom and are calcu-
lated to throw light upon its nature, are always considered
a part of the transaction itself, while that which is merely
narrative in its nature, occurring after the main transaction
is closed, cannot be considered a part of the transaction but
must be considered as simply hearsay; but the line between
the two classes is sometimes very shadowy and hard to draw.
The remark of the deceased in the present case, while it has
some of the elements of a narrative, was plainly very closely
connected with the main fact, both as to time and place.
The witness arrived on the scene within a very few moments
after the breaking of the lamp; fire was still smoldering in
the curtain and in some of the clothing in the kitchen; both
actors were practically on the spot; there had hardly been
time for premeditation or the making up of a story; the re-

mark itself is in the nature of an exclamation and bears some, at least, of the marks of a spontaneous utterance springing from the excitement of the moment. Under the rule established in the cases cited, we think it was rightly admitted in evidence as a part of the *res gestæ.*

4. It is claimed that the court erred in charging the jury as follows:

"That Kate Bliss died at the time and place and under the facts and circumstances mentioned on the 31st day of January last, are facts that are not contested on the part of the defendant."

This sentence occurred in the early part of the charge, and the only facts which had been mentioned in the charge were a recital that the information charged that the defendant "on the 30th day of January, 1902, in this city and county, from premeditated design to effect the death of Kate Bliss, did feloniously, wilfully, and of his malice aforethought then and there kill and murder said Kate Bliss," and that defendant pleads not guilty to this charge. It is evident that the charge was unfortunately worded, because, strictly speaking, it might be construed as meaning that the deceased died under the facts and circumstances stated in the information; but it could hardly be claimed that any reasonable man would so understand the sentence, nor is it claimed by the plaintiff in error that it would be so understood by the jury. The claim is, however, that, notwithstanding the fact that the evidence of the attending physician that her death resulted from her burns and the shock was undisputed, still this was a question which must be determined by the jury alone and could not be assumed by the court, and it is said that the instruction in effect instructs the jury that such is the undisputed fact, and thus takes from them a question which they alone could properly answer. Conceding the law to be as claimed, the instruction does not violate it. The fact that the deceased was severely burned as the result of the breaking of the lamp

on the night in question, and that she died soon after, were facts admitted by all the witnesses in the case and even by the defendant himself. These are substantially the facts which we think the jury must have understood the court to refer to in the instruction. That the charge was not intended to convey the idea to the jury that the death of the deceased was proven to be due to any act of the plaintiff in error is very evident from the immediately succeeding clauses of the charge, by which the jury are carefully told that the first question for them to settle is whether the death was the result of the act of some person or was attributable to a natural cause, and this is followed by full and fair instructions upon the question. We think, therefore, that no error was committed by the instruction in question.

5. After the jury had deliberated more than five hours, they returned into court and desired information as to the penalties fixed by the statute for the various degrees of murder and manslaughter which had been submitted to them by the charge, and the court, after telling them that they were not concerned primarily with the punishment, but were simply to determine the question of guilt or innocence, finally informed them what penalties the statute prescribed for the various offenses. We certainly cannot approve this practice. Under our criminal laws the jury's sole duty is to decide the fact of guilt, and it is the sole province of the court to determine the punishment within the limits prescribed by the statute. The communication to the jury of the penalties could therefore serve no useful purpose in their deliberations, but would rather tend to pave the way for a compromise verdict. It is a practice which should not be followed. We are not prepared to say that it would be a necessary ground of reversal, especially in a case where the proof of guilt is satisfactory and cogent, nor are we prepared to say that it might not be ground for reversal in a case where the circumstances seem to indicate that the knowledge by the jury of the penal-

ties had some influence on the character of the verdict. Owing to considerations hereafter stated it is not necessary to decide the question in this case, and we leave the matter with this expression of disapproval of the practice.

6. After the verdict was returned into court the jury were polled, and one juryman answered that it was his verdict with a provision, and that the agreement was that the jury ask for the clemency of the court on behalf of the prisoner. Upon being asked again, however, whether the verdict was and still is his verdict, he answered unconditionally in the affirmative. Substantially the same statement was made by another juror, followed by an unconditional assent. We have had some difficulty with this question. The principle is well settled that if, upon polling, a juryman expresses dissatisfaction with the verdict returned or doubt as to its correctness, it should not be received. *Austin v. State,* 6 Wis. 205. However, as a recommendation for mercy does not necessarily indicate dissatisfaction or doubt as to the question of guilt and, moreover, is no part of the verdict, we have concluded that where the juryman afterwards unqualifiedly assents to the verdict as rendered there is no prejudicial error in receiving it.

7. A number of exceptions were taken to remarks of counsel for the state upon the argument of the case to the jury. We do not find it necessary to set these remarks out at length in this opinion. While some of them may perhaps be criticised, there were none which did not have some foundation in the evidence, and the trial court, in our opinion, exercised a fair and reasonable discretion with reference to them.

8. In support of a motion for a new trial, affidavits were submitted tending to show that one juryman had expressed an opinion before the trial that the plaintiff in error should be hung, whereas, upon his examination on *voir dire,* he stated that he had neither formed nor expressed any opinion as to the guilt of the accused. The affidavit of the juryman

himself was filed, in which he denied ever having made the statement charged or any similar statement, and the court overruled the motion. The question whether the juryman was disqualified was one of fact for the determination of the trial court, and as such decision does not appear to have been against the weight of the evidence it will not be disturbed by this court.

9. The objection that there is no sufficient evidence to convict the plaintiff in error, and that a verdict in his favor should have been directed, must be overruled. We are satisfied that the evidence was entirely sufficient to warrant and require the submission of the case to the jury.

10. The trial court submitted to the jury the question whether the accused was guilty of murder in the first or second degree, or of manslaughter in the first, second, or third degree, but refused, upon written request, to submit the question whether he was guilty of manslaughter in the fourth degree, and this ruling is alleged as error. Under our statute there are two classes of manslaughter in the fourth degree. The first, covered by sec. 4362, Stats. 1898, consists in the involuntary killing of another by any weapon or by any means, neither cruel nor unusual, in the heat of passion, in any cases other than such as are declared by the statutes to be justifiable or excusable homicide; while the second class, covered by sec. 4363, consists in every killing of a human being (not included within the other homicidal offenses named in the chapter) by the act, procurement, or culpable negligence of another, where such killing is not justifiable or excusable. The theory of the state was that the plaintiff in error either struck the deceased with the lamp intentionally, or struck the lamp with his cane intentionally, and thus caused the fire; while the theory of the defense was that he hit the lamp accidentally, when throwing up his hands under the supposition that the deceased was throwing the lamp at him. We agree with the trial court that under no theory of

the facts was it proper to submit the question of manslaughter in the fourth degree under sec. 4362, because, if the state's theory be correct, then the weapon or the means used was undeniably both cruel and unusual—a lighted kerosene lamp full of oil must be considered a cruel and unusual weapon; on the other hand, if the evidence of the accused is to be believed there was no heat of passion. So the ruling was correct so far as sec. 4362 was concerned.

But as to sec. 4363 we have been entirely unable to see why the question of guilt thereunder should not have been submitted to the jury. The plaintiff in error told his story, and it was not by any means an incredible one. From it there was ample room to conclude that the plaintiff in error accidentally struck the lamp when throwing up his hands under the supposition that the deceased was about to strike him with it, but that as matter of fact he was not justified in so supposing, and that hence his act in throwing up his cane was not justifiable or excusable, but culpably negligent. If the jury had found these to be the facts, a verdict of manslaughter in the fourth degree would have been the only proper verdict. We have given the whole case the most careful and mature deliberation within our power, and have been unable to escape this conclusion. No lengthy discussion would add anything to the force of the proposition. For this reason there must be a new trial.

*By the Court.*—Judgment reversed, and action remanded for a new trial. The warden of the state prison will deliver the person of the plaintiff in error, *Charles Bliss,* to the sheriff of Columbia county, who will safely keep him in custody until he is thence discharged by due process of law.