LANGSTON, Plaintiff in error, v. STATE, Defendant in error.

*No. State 143.   Submitted under sec. (Rule) 251.54 October 31, 1973.——Decided November 27, 1973.*
(Also reported in 212 N. W. 2d 113.)

For the plaintiff in error the cause was submitted on the briefs of *Howard B. Eisenberg,* state public

defender, and *Ronald L. Brandt*, assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Robert W. Warren*, attorney general, and *Steven B. Wickland*, assistant attorney general.

CONNOR T. HANSEN, J.  The information alleges that the defendant robbed William G. Shea of approximately $180 while armed with a dangerous weapon, to wit: "a bottle wrapped in a bag."  At the time of the alleged robbery, the defendant was a passenger in Shea's taxi-cab.

After the defendant had been taken to his requested destination, the driver advised that the fare was less than $1, and in the process of negotiating the change for a $20 bill, which the defendant said he had, defendant ordered the driver to give him all his money and turn off the ignition of the taxicab.  The driver refused to turn off the ignition, so the defendant turned it off and then struck the driver on the head with a bottle, thereby breaking his glasses.  The driver described the bottle as being similar to an eight-to-ten-ounce coke bottle with a cap on it.  The driver testified that after this incident, defendant threatened three or four times to kill him, whereupon he decided to offer no further resistance.  Defendant went through the driver's pockets, removed approximately $180 and a black coin purse, and then fled.

The police were promptly notified of the incident and contacted the driver of the taxicab.  The driver described his assailant to the investigating officers, and from this description, one of the detectives considered the defendant to be a suspect.  The officers went to the address where the defendant was believed to be living and were admitted by the landlady.  They found the defendant lying on a bed counting a large

sum of money. Also, there was a black coin purse on the bed, later identified as the one taken from the driver. The defendant was arrested and this prosecution ensued.

The issues raised on this appeal relate to the jury instructions given by the trial judge [1] and the imposition of sentence.

## Instructions.

In its instructions to the jury, the trial court substantially repeated the statutory language of the offense which included the following, " '. . . Whoever violates sub. (1) while armed with a dangerous weapon may be . . .' punished," and then he stated, "The testimony in this case shows that a bottle was used as a weapon." The defendant argues that this statement in the instructions is prejudicial error.

Immediately following the utterance of the foregoing statement, the trial court proceeded to discuss the necessary elements of the crime charged, and correctly explained the requisites for a jury finding of robbery while armed. The trial court further instructed:

"Section 939.22, sub. (10), of the Wisconsin Statutes defines dangerous weapon as any device or instrumentality which in the manner it is used or intended to be used is calculated or likely to produce death or great bodily harm. Great bodily harm, according to Section 939.22, sub. (14), of the Wisconsin Statutes means bodily injury which creates a high probability of death or which causes serious permanent disfigurement or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury.

[1] In *State v. Langston* (1971), 53 Wis. 2d 228, 191 N. W. 2d 713, it was determined that error such as improper jury instructions could not be reached in a postconviction proceeding under sec. 974.06, Stats.

"If you find from the testimony that a bottle was, in fact, used as a weapon in the commission of this offense and the bottle so used constituted a device or an instrumentality which in the manner in which it was used was calculated or likely to produce death or great bodily harm as heretofore defined, then you may find that the bottle so used was a dangerous weapon. If you find that this was not the case, then you should consider that the bottle was not a dangerous weapon within the definition given."

We find no prejudicial error in the jury instructions given by the trial court.

In *Schwenn v. Loraine Hotel Co.* (1961), 14 Wis. 2d 601, 610, 111 N. W. 2d 495, it was recognized that:

". . . [W]hen instructing the jury, the trial court should avoid stating facts and conclusions which are in dispute in an affirmative manner. Such practice could amount to an unwarranted invasion of the province of the jury. See *Cohen v. Bridges* (1949), 255 Wis. 535, 39 N. W. (2d) 373."

The statement which the defendant challenges on this review did not constitute an unwarranted invasion of the province of the jury by the trial court. The information charged that the "dangerous weapon" used in the instant offense was a bottle. Thus, the critical issue to be determined by the jury was whether the bottle, considering its nature and the manner in which it was used, constituted a dangerous weapon. The statement of the trial court, to the effect that a bottle was used as a weapon, specifically identified the issue to be determined by the jury. The instructions explicitly charged the jury with the responsibility of making a determination as to whether a bottle was, in fact, used as a dangerous weapon in the commission of this offense within the contemplation of the statute.

It was within the province of the jury to determine whether a bottle of this nature, used in the manner

in which it was, striking the driver on the temple, could be calculated or likely to produce great bodily harm as defined in sec. 939.22 (14), Stats., and thereby constitute a dangerous weapon within the meaning of sec. 939.22 (10). The instructions placed this responsibility entirely upon the jury.

The statutory definition of a dangerous weapon as it relates to armed robbery does not require actual injury to the victim. It is concerned with whether the device or instrumentality is used or intended to be used in a manner calculated or likely to produce death or great bodily harm. The defendant's reliance on *State v. Bronston* (1959), 7 Wis. 2d 627, 97 N. W. 2d 504; 98 N. W. 2d 468, wherein the defendant was charged with aggravated battery, is misplaced. Furthermore, in the instant case the jury could have also determined that the bottle was used to threaten the driver. The driver acquiesced in the taking of his money after he was hit on the head with the bottle and the defendant had three or four times threatened to kill him.

While we have exercised our discretion to review the alleged prejudicial error in the jury instructions on its merits, we observe that the defendant has effectively waived any right to such a review by failure to request a specific instruction or object to the instruction at trial.[2] The record reflects that defendant's experienced trial counsel was cognizant of this issue because at the conclusion of the state's case and before the defendant proceeded with his defense, the trial court rejected defendant's argument that the bottle was not a dangerous weapon offered in support of his motion to dismiss.

At least as far back as 1860, when one Mr. Graves was convicted of stealing a horse and the state supreme

[2] *See: Claybrooks v. State* (1971), 50 Wis. 2d 79, 84, 183 N. W. 2d 139; and sec. 274.37, Stats.

court reviewed his conviction it has been recognized that:

". . . It is the constant practice of this court not to review or consider questions involved in the instructions given to the jury at the circuit, where, from the course pursued, we can see that the attention of the circuit judge was not fairly and explicitly called to them. . . ." *Graves v. State* (1860), 12 Wis. 659, 663 (\*591, \*594, \*595).

More recently, in *State v. Schenk* (1972), 53 Wis. 2d 327, 333, 193 N. W. 2d 26, it was again reiterated:

"This court has consistently held that it would consider the failure to timely object to jury instructions as a waiver of any alleged defects in those instructions. *Kimmons v. State* (1971), 51 Wis. 2d 266, 268, 186 N. W. 2d 308; *Mitchell v. State* (1970), 47 Wis. 2d 695, 699, 700, 177 N. W. 2d 833. . . ."

### *Sentence.*

The defendant also raises the issue of whether the defendant's sentence of an indeterminate term of not more than twenty years was excessive.

Before imposing sentence, the trial court heard defense counsel who specifically brought to the attention of the court the fact that a sanity hearing had been conducted prior to trial, at which time it was determined that the defendant had sufficient mental capacity to stand trial. It was explained to the court that the defendant had previously been committed to Central State Hospital at Waupun on October 5, 1960, after having been adjudicated feeble-minded; that the staff of the hospital had accepted a diagnosis of moderate mental deficiency; and that the defendant had an IQ of 54. It was also explained that the defendant had been in and out of the state hospital during various periods; that he had been arrested and charged with attempted burglary prior to March 5,

1963; and also arrested for armed robbery on December 23, 1967, upon which charge the defendant was found sane and capable of standing trial and ultimately acquitted. Defense counsel admitted that defendant had ". . . an extensive criminal record. . . ." A presentence investigation was requested by defense counsel but when the defendant, himself, was asked if he had anything to say, he said, "I do not want a presentence." Instead, he said he would appreciate it if the judge would pass sentence immediately. He said he wanted to go to the Green Bay reformatory to receive some education so that when he was released he could get work, save his money and return home to his relatives in Mississippi. The judge reviewed the extensive criminal record of the defendant and stated that the defendant was too old to be sentenced to the Green Bay Reformatory. However, the district attorney explained that even if he was sentenced to Waupun, the authorities there could make an appropriate transfer if he would benefit by it. The defendant said he understood this. The judge explained that, mindful of the defendant's limited mental capacity, his duty to society, the seriousness of the crime, and all of the factors brought out at trial, a sentence of an indeterminate term of not more than twenty years was appropriate.

The trial court, therefore, acted within his discretion and expressly mentioned those factors which had bearing on his determination as to sentence. *McCleary v. State* (1971), 49 Wis. 2d 263, 182 N. W. 2d 512.

Counsel for the defendant on this appeal objects that a presentence was not ordered, although the defendant himself specifically requested that one not be ordered.

In *Byas v. State* (1972), 55 Wis. 2d 125, 128, 129, 197 N. W. 2d 757, we said:

"In several cases we have encouraged the use of presentence investigations and reports, but we have also stated that these reports are not necessarily required

because the trial judge must decide and impose an appropriate sentence from all of the information and not just a presentence report. . . ."

*See also: State v. Cole* (1971), 50 Wis. 2d 449, 458, 459, 184 N. W. 2d 75; *State v. Schilz* (1971), 50 Wis. 2d 395, 401, 402, 184 N. W. 2d 134.

The defendant, in his brief, sets forth various sentences which have been imposed for this offense by the different courts throughout the state. These figures are apparently taken from reported and unreported cases which have come before this court. From these statistics, it is argued that there is a great disparity in sentences imposed for armed robbery throughout the state. It is also submitted that these figures reflect that sentences imposed for this offense in Milwaukee county are for a longer term than those sentences imposed for the same offense elsewhere in the state. Hence, it is argued that this court should modify the sentence imposed in the instant case. This we decline to do. No valid conclusions can be drawn from such a review because it in no way identifies any of the factors considered by the trial court in the imposition of the various sentences and it fails to recognize convictions which have not been appealed. Moreover, in *McCleary, supra,* page 272, this court expressly recognized that the ". . . disparity in the sentences received by persons committing similar crimes does not establish denial of equal protection."

The trial judge properly exercised his discretion in sentencing the defendant in this case and this court has repeatedly expressed the existence of a strong policy against any interference with the discretion of the trial court in passing sentence. *Riley v. State* (1970), 47 Wis. 2d 801, 802, 177 N. W. 2d 838.

*By the Court.*—Judgment affirmed.