WERNER, Plaintiff in error, v. STATE, Defendant in error.

*No. State 128. Submitted under sec. (Rule) 251.54 December 2, 1974.—Decided March 4, 1975.*
(Also reported in 226 N. W. 2d 402.)

738

The cause was submitted for the plaintiff in error on the brief of *Howard B. Eisenberg,* state public defender, and *Ronald L. Brandt,* assistant state public defender; and for the defendant in error on the brief of *Robert W. Warren,* attorney general, and *David J. Becker,* assistant attorney general.

WILKIE, C. J. The plaintiff in error, Warren H. Werner (hereinafter defendant), was sentenced to a prison term of not less than five and not more than fifteen years following his conviction for second-degree murder in violation of sec. 940.02, Stats. We reverse because of the error that was made in the instructions to the jury by the trial court.

There are certain undisputed facts about the incident that underlie this conviction. During the evening of October 3, 1972, defendant and his brother Ronald Werner were at a tavern located in the unincorporated village of Poniatowski in Marathon county. They were there with the victim, Russell Karlen, and the victim's brother Allen (Ozzie) Karlen. After approximately two hours of drinking, at 10 or 10:30, the four began to heatedly argue about the relative merits of certain cars. The argument subsided after a time. Then as a favor to the bartender, defendant left the tavern and drove down the road to buy some orange juice for use in mixed drinks. Before re-entering the tavern, defendant armed himself with a sheathed hunting knife that had been in his car. He placed the knife in his pants pocket. He testified that he needed the knife in case of trouble because his left index finger had been injured at work, rendering his left hand useless in a fight. He felt the knife would be an "equalizer." Back in the tavern, he showed the knife to two people, saying he had it "in case any trouble started."

Shortly after defendant returned, the argument between the two sets of brothers recommenced, and after a

time, Ronald Werner and Ozzie Karlen left the tavern and went outside. Back inside, Russell Karlen grabbed defendant by his shirt collar and warned him to stay out of the fight. A patron of the tavern broke up this little affray. Soon, however, both defendant and Russell Karlen were outside along with Ronald Werner and Ozzie Karlen, and another tavern patron named Russell Behrens. Ronald and Ozzie began fighting and Russell Karlen pushed defendant backwards and defendant fell. In the altercation between these two that followed, defendant stabbed Russell Karlen in the inner portion of the upper left thigh with the hunting knife he had taken from the car. The knife's blade was five inches long and the wound inflicted, pointing up towards the abdomen, indicated the knife had been plunged into the leg up to the hilt. Both the femoral artery and vein were severed and Karlen immediately began severe hemorrhaging. He bled to death before arrival at the hospital. There was no evidence that either Russell or Ozzie Karlen or Ronald Werner had any weapons; the defendant was apparently the only one who was armed. Sometime after the stabbing, defendant started crying.

At this point, there is a dispute as to what occurred. At the trial defendant did not dispute that he stabbed and killed Russell Karlen. Rather, he tried to represent himself as a peacemaker and Russell Karlen as a trouble-maker. He contended (a) that he acted reasonably in the exercise of a privilege of self-defense, and (b) that he did not know he had a knife in his hand when he committed the fatal stabbing.

Defendant testified that upon leaving the tavern he tried unsuccessfully to prevent his brother and Ozzie Karlen from fighting. This testimony was corroborated by two witnesses. Further, he said that Russell Karlen was the aggressor in his own fight and that Russell had punched him four or five times as hard as he could, each time knocking him back on the ground, before the stabbing took place. Concerning the actual stabbing, defend-

ant testified as follows in response to his own attorney's questions:

"*A.* He [Russell Karlen] started coming at me every time. I wouldn't hardly get up and he would just keep knocking me down. And I went down and my hand hit something.

"*Q.* What did your hand hit?

"*A.* I don't know.

"*Q.* Where was it that your hand hit something?

"*A.* I was laying on the ground, when I went down I caught myself and my hand just hit something.

"*Q.* What did you do with whatever your hand hit?

"*A.* I just—I grabbed it.

"*Q.* What did you do with it then?

"*A.* Russell was coming at me again and I just—I swung out at him. I tried to stop him.

"*Q.* Would you show the jury to the best of your recollection how you swung out at him?

"*A.* He was coming at me. I just took it and hit at his legs.

"*Q.* What position were you in at this time?

"*A.* I believe I was on my knees. I was just starting to—I was just starting to get back up."

After the stabbing defendant told bystanders he had only hit Karlen with his hand.

No one actually witnessed the stabbing and any preceding scuffle, except when Russell Karlen initially shoved defendant. A sheriff investigating the incident said that shortly after the stabbing defendant said he was shoved by Karlen and that then defendant hit Karlen. Defendant never said at that time that Karlen had punched him. Accounts differed as to whether defendant was injured in any way as a result of the alleged blows struck by Karlen. Police pictures of defendant taken after the stabbing reveal a slight cut above his eye and possibly slight puffiness of the nose, but any injuries appeared minor. As shown by this picture, the defendant does not look like a person who had just been severely beaten. The physician who performed the autopsy on Russell Karlen found no evidence of trauma on the de-

cedent's hands that would indicate they had been involved in striking another person.

One bystander, Leonard Bornheimer, testified that after the stabbing:

"I asked him [the defendant] what he cut him with. He said his hand. And he said, 'Come here, you'll get the same thing.' . . ."

Furthermore, Bornheimer and the tavernkeeper's wife both testified that about ten minutes after the stabbing, defendant said he hoped Karlen would die. The tavernkeeper's wife was attempting to give first aid to the victim when she heard the following:

"I heard him say, everybody was shouting and Warren said, 'The son of a bitch ought to die.' I said, 'Warren, you don't mean that.'"

Defendant denied making either statement, but upon cross-examination admitted that he possibly made the latter statement "in the confusion."

Three issues are raised about alleged errors in the conduct of the trial:

I. Did the trial court err in refusing to admit testimony concerning specific acts of violent behavior of the victim?

II. Did the trial court err in refusing to submit the offense of homicide by reckless conduct, sec. 940.06, Stats., to the jury?

III. Does an error in the self-defense instruction, not objected to, require reversal and a new trial?

*Testimony on specific acts of violent behavior of the victim.*

Numerous witnesses, including defendant, stated their opinions concerning Russell Karlen's reputation in the

community for violence and turbulence. Defendant argues, however, that the trial court should have allowed testimony relating to specific instances of Karlen's past misconduct. The trial court did not err in this respect.

Defendant relies principally on the recent case of *McMorris v. State*,[1] where this court held that a defendant who establishes a factual basis for the issue of self-defense may testify as to his personal knowledge of prior specific acts of violence by the victim of the assault. The purpose in allowing such testimony is not to support an inference about the victim's actual conduct during the incident; rather, the testimony relates to the defendant's state of mind, showing what his beliefs were concerning the victim's character. Such evidence helps the jury determine whether the defendant "acted as a reasonably prudent person would under similar beliefs and circumstances" in the exercise of a privilege of self-defense.[2] As the court held, however, "The admission of such evidence rests in the exercise of sound and reasonable discretion by the trial court." [3]

Defendant cannot rely on *McMorris* because no attempt was actually made at the trial here to elicit testimony from defendant concerning specific prior instances of the victim's violent conduct. Accordingly, the trial court never had the opportunity of ruling on the admissibility of any such evidence.

Although the trial court did rule that two other witnesses could not testify concerning specific prior instances of the victim's violent conduct, these rulings in no way prevented the defense attorney from trying to elicit such testimony from defendant. The justification

---

[1] (1973), 58 Wis. 2d 144, 205 N. W. 2d 559.

[2] *Id.* at page 151.

[3] *Id.* at page 152.

for excluding such testimony of other witnesses rests on a completely different ground from the rationale for allowing the defendant to so testify. Evidence of prior specific conduct may not be used to prove that the victim acted in conformity with that conduct. The defendant may testify concerning specific conduct within his knowledge to show his state of mind. However, it is noteworthy here that the defense attorney never mentioned this latter rationale when arguing evidence questions during trial.

It is true that in support of a postverdict motion for a new trial, defendant's appellate counsel made an "offer of proof" wherein defendant testified to a number of fights he knew the victim had been involved in. However, as the court said in *Robinson v. State*,[4] "Error cannot be predicated on omission of testimony which was never proffered as evidence for the jury to hear."

Defendant also argues the trial court erred in excluding testimony of witnesses other than defendant concerning specific prior instances of violence by the victim. Defendant again mistakenly relies on *McMorris* for this contention. *McMorris* was concerned solely with conduct evidence within the defendant's knowledge that shed light on the defendant's mental state.[5] This court has long disapproved the use of specific instances of conduct to prove violent character. As the court said in *Lowe v. Ring*,[6] a civil assault and battery action: "Proof of par-

---

[4] (1971), 52 Wis. 2d 478, 488, 190 N. W. 2d 193.

[5] *Cf.* Note, *Evidence—Self Defense—Prior Acts of the Victim*, 1974 Wis. L. Rev. 266.

[6] (1904), 123 Wis. 107, 112, 101 N. W. 381.

The new Wisconsin Rules of Evidence, effective January 1, 1974, are consistent with this rule. Under sec. 904.04 (1) (b), Stats., evidence of the character of an attack victim is admissible; but under sec. 904.05 (1), proof of character on direct examination is only by testimony as to general reputation or testimony in the form of an opinion. Specific conduct evidence is admissible under sec. 904.05 (2), where character is an "essential element

ticular instances of misconduct of a party, as evidence of character, is deemed repugnant to the best administration of justice . . . ." The reason for exclusion of such evidence: "confusion of issues, waste of time, and 'because of the unfair surprise to the witness, who cannot know what variety of false charges may be specified, and cannot be prepared to expose their falsity.' "

Thus, we conclude that the trial court ruled correctly on the evidence questions raised on appeal by defendant.

### *Refusal to submit the offense of homicide by reckless conduct to the jury.*

The trial court instructed the jury concerning the offenses of second-degree murder and manslaughter, and the privilege of self-defense. Defendant also requested but the court refused to give an instruction on homicide by reckless conduct under sec. 940.06, Stats.

In *Ross v. State* [7] this court again restated the rule for determining when instructions on lesser degrees of homicide should be submitted to the jury:

" ' "To justify submitting lesser degrees of homicide than that charged in the information, there must be a reasonable ground in the evidence for acquittal on the greater charge and for conviction on the lesser charge. . . ."
" ' "The key word in the rule is 'reasonable.' The rule does not suggest some near automatic inclusion of all lesser but included offenses as additional options to a jury. Only if 'under a different, but reasonable view,' the evidence is sufficient to establish guilt of the lower degree and also leave a reasonable doubt as to some

---

of a charge, claim, or defense." As the notes following secs. 904.04 and 904.05 make clear, however, use of character evidence to prove that the victim was the aggressor in a fight is not such a situation.

[7] (1973), 61 Wis. 2d 160, 169, 211 N. W. 2d 827.

particular element included in the higher degree but not the lower, should the lesser crime also be submitted to the jury. . . ." ' "

The question in the instant case is whether under a reasonable view of the evidence the jury could have acquitted defendant of second-degree murder and convicted him of homicide by reckless conduct. Our answer is "No" because the jury could not reasonably have found defendant guilty of homicide by reckless conduct. Sec. 940.06, Stats., provides:

"(1) Whoever causes the death of another human being by reckless conduct may be fined not more than $2,500 or imprisoned not more than 5 years or both.
"(2) Reckless conduct consists of an act which creates a situation of unreasonable risk and high probability of death or great bodily harm to another and which demonstrates a conscious disregard for the safety of another and a willingness to take known chances of perpetrating an injury. It is intended that this definition embraces all of the elements of what was heretofore known as gross negligence in the criminal law of Wisconsin."

As the court recently said in *Hayzes v. State*,[8] this offense, as well as homicide by negligent use of a weapon as defined in sec. 940.08, Stats., "are degrees of negligent homicide:"

". . . That is, where the death was caused without the intent to commit bodily harm, but the conduct of the actor was such that there was a high probability that someone would be killed or injured."

A good example is found in *Seidler v. State*[9] where this court reversed a second-degree murder conviction, holding that the evidence instead showed defendant's activity to have been "homicide by reckless conduct." Defendant was a baby-sitter who threw a two-year-old child toward her

[8] (1974), 64 Wis. 2d 189, 198, 218 N. W. 2d 717.
[9] (1974), 64 Wis. 2d 456, 219 N. W. 2d 320.

bed. The child hit the bottom of the bunk bed and sustained fatal injuries. This court said that defendant's conduct fulfilled sec. 940.06, rather than sec. 940.02, in part, because he did not intend to harm the child:

"The facts show that Seidler threw the child into the bedroom in the direction of the bed. To do so, he grabbed her and threw her by her left arm. While the evidence shows that she hit either the metal frame of the bed or possibly a bedpost, there is no evidence that Seidler consciously threw her at the hard and unyielding portions of the bed. . . .

"The conduct of the defendant has not been shown to be of the type that was inherently dangerous to life. It does not fit the definition of Mr. Chief Justice RYAN, which requires that, for second-degree murder, there be 'constructive intent' to cause death.

"The seminal case of *Hogan, supra,* is instructive and conclusive. The striking of the victim's face with the sharp edge of an axe was held to furnish evidence of such conduct—of conduct imminently and inherently dangerous to the life of another. The conduct of Seidler, though reprehensible and resulting in death, carries with it no such connotation." [10]

In the case at bar, however, defendant's conduct was indicative of intention to cause harm (although not death) rather than negligent conduct.[11] This latter point is evidenced by the characteristics of the stabbing itself in addition to defendant's statements before and after the

---

[10] *Id.* at page 463.

[11] *Cf. Bliss v. State* (1903), 117 Wis. 596, 607, 94 N. W. 325, relied on by defendant where the court reversed a third-degree manslaughter conviction and held the jury should have been instructed on fourth-degree manslaughter (negligent homicide). In *Bliss,* unlike the case at bar, however, the court found that under one reasonable view of the evidence, defendant could have accidentally inflicted the harm (breaking of kerosene lamp resulting in ignition of victim's clothing) that caused death, while defending himself. The stabbing in the instant case was not accidental under any reasonable view of the evidence.

stabbing and at trial. While defendant's testimony may relate to self-defense, it does not establish negligence even of a very high degree.

Thus we conclude that the trial court properly refused to instruct the jury on homicide by reckless conduct.

### The self-defense instruction.

The portion of the self-defense instruction complained of by defendant is the following:

"If you find that the defendant *did intentionally cause the death of Russell Karlen,* and as charged in the Information, but that he did so under circumstances that under the law of self-defense, as it has been explained to you, such use of force was privileged, then you must find the defendant not guilty, giving to the defendant the benefit of any reasonable doubt as to whether his conduct was privileged under the law of self-defense. . . ." (Emphasis supplied.)

Prior to this instruction the trial court had explained generally the law of self-defense. However, this was the only instruction informing the jury that if defendant's conduct was privileged under the law of self-defense, he must be found not guilty. Later instructions related to second-degree murder/no privilege of self-defense, and manslaughter/unreasonable force in exercise of privilege of self-defense.

It is conceded by the state and the trial court that the emphasized language is legally erroneous. The language requiring intention to cause death would be appropriate if defendant had been charged with first-degree murder. It is entirely inappropriate where the offense charged is second-degree murder. The instruction as given explicitly requires the jury to find intent to kill before it can find defendant's conduct privileged under the law of self-defense, and there was no evidence in the case that defendant intended to kill the victim.

This instruction is generally part of Wisconsin Jury Instructions—Criminal, Part I, 805. In *State v. Kanzelberger*[12] the court approved this instruction and said it was consistent with sec. 939.48 (1), Stats.,[13] spelling out the privilege of self-defense. That sample instruction gives several alternatives and the trial court here chose the wrong alternative. The key paragraph of Wis J I—Criminal, Part I, 805, provides:

"If you find that the defendant did intentionally *(cause great bodily harm to) (cause the death of) (use force intended or likely to cause death or great bodily harm against)* . . . , as *(charged) (submitted),* but that he did so under such circumstances that under the law of self-defense as it has been explained to you, such use of force was privileged, then you must find the defendant not guilty, giving to the defendant the benefit of any reasonable doubt as to whether his conduct was privileged under the law of self-defense."

The trial court selected the phrase "cause the death of." This defect could have been cured if the court had either used the phrase "use force intended or likely to cause death or great bodily harm against," or simply deleted the word "intentionally."

The crucial issue on this appeal thus becomes whether the error in the instruction is sufficient to merit reversal.

---

[12] (1965), 28 Wis. 2d 652, 660, 137 N. W. 2d 419, certiorari denied, 385 U. S. 867, 87 Sup. Ct. 127, 17 L. Ed. 2d 93. ("We have examined the instruction as given and do not find it inconsistent with sec. 939.48 (1), Stats., nor otherwise erroneous.")

[13] Sec. 939.48 (1), Stats., provides: "A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what he reasonably believes to be an unlawful interference with his person by such other person. The actor may intentionally use only such force or threat thereof as he reasonably believes is necessary to prevent or terminate the interference. He may not intentionally use force which is intended or likely to cause death or great bodily harm unless he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself."

We have held that, where the trial court inadvertently uses the wrong words, for example, "can" rather than "cannot," or "mental conduct" rather than "criminal conduct," it is not reversible error if the judge's true meaning would have been apparent to the " 'ordinarily intelligent mind.' " [14] Then too we have ruled that if "[c]onsidering the . . . instructions in their entirety," the error is rendered harmless because of other correct statements of law contained in the instructions, there are no grounds for reversal.[15] Even though the error is not rendered harmless by other portions of the instruction, it is not reversible error where "it cannot reasonably be said that had such error not been committed, the verdict might probably have been different." [16]

Here, the instruction went to the heart of the defendant's self-defense claim and, if followed strictly by the jury, precluded a finding of not guilty by reason of self-defense. The state argues that the general instructions on self-defense, admittedly correct, cured the defect. However, the requirement of finding intent to cause death was stated as a prerequisite to finding that defendant's use of force was privileged under the law of self-defense. In view of the fact that, if properly instructed, the jury, with the evidence before it, could have reasonably returned either a second-degree murder or manslaughter verdict in addition to the alternative of "not guilty" based on self-defense, we conclude that the error in instruction was harmful and requires a retrial.

[14] *Wilson v. State* (1973), 59 Wis. 2d 269, 291, 208 N. W. 2d 134.

[15] *Kimmons v. State* (1971), 51 Wis. 2d 266, 268, 186 N. W. 2d 308.

[16] *Claybrooks v. State* (1971), 50 Wis. 2d 79, 86, 183 N. W. 2d 139.

*Waiver.*

The state points out that the defense attorney failed to object as the instructions were being read. Objection to the error was first raised to support a postverdict motion for a new trial. Although the error in instruction thus may not be raised, as of right, on appeal,[17] because the error relates so crucially to defendant's self-defense claim, this court, in its discretion, elects to consider the error regardless of waiver.[18]

*By the Court.*—Judgment and order reversed and cause remanded for further proceedings in accordance with this opinion.

ROBERT W. HANSEN, J. *(dissenting).* The challenge here is to a single sentence in the instructions to the jury by the judge in this case. The claim of error is that this single sentence was incorrect and confusing to the jury. Considering such challenge and claim, we are not to excise such single sentence and limit appellate review to its soundness. Rather, the instructions given by the judge to the jury are to be considered ". . . in their entirety."[1] As this court has said, ". . . it is well settled that, in determining whether there has been any error in instructions to a jury, they must be considered as a whole. . . ."[2]

Here the defendant was found guilty by the jury of second-degree murder. Second-degree murder and man-

---

[17] *Mitchell v. State* (1970), 47 Wis. 2d 695, 700, 177 N. W. 2d 833.

[18] *Brown v. State* (1973), 59 Wis. 2d 200, 214, 207 N. W. 2d 602; *Lampkins v. State* (1971), 51 Wis. 2d 564, 573, 187 N. W. 2d 164.

[1] *Kimmons v. State* (1971), 51 Wis. 2d 266, 268, 186 N. W. 2d 308.

[2] *State v. Davidson* (1969), 44 Wis. 2d 177, 190, 170 N. W. 2d 755.

slaughter were the two charges submitted to the jury. As to both charges, the defendant asserted the defense of self-defense. The faulting of the instructions goes solely to the trial judge's instructions as to the right to act in self-defense. The defendant was entitled to what this court has termed "special defensive instructions" as to self-defense, this being the "legal theory" of the defense.[3] The test on review is whether, in the instant case, ". . . the legal theory of the defense was adequately covered by the instructions. . . ."[4]

As to the issue of self-defense on the charge of second-degree murder, the trial judge correctly instructed the jury:

"Self-defense is an issue in this case.

"The Criminal Code of Wisconsin provides that a person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what he reasonably believes to be an unlawful interference with his person by such other person. However, he may intentionally use only such force or threat thereof as he reasonably believes is necessary to prevent or terminate the interference. He may not intentionally use force which is intended or likely to cause death or great bodily harm unless he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself.

"For the defendant's conduct to be privileged under the law of self-defense, the defendant must have reasonably believed that there was an actual or imminent unlawful interference with his person. This requires that he actually believed such interference to be unlawful. The fact that this belief may have been erroneous does not deprive the defendant of his privilege to use force in defense of his person if a person of ordinary intelligence and prudence under the same circumstances, would have believed such interference to be unlawful."

[3] *Id.* at page 192.
[4] *Id.* at page 192.

Then followed two paragraphs, included in the instructions given by specific request of the defendant through his trial counsel:

"You are instructed that an unlawful interference is a criminal act committed upon the person of another. As it applies to the facts in this case the jury might find that there was an unlawful interference if Warren Werner suffered harm and, second, that Russell Karlen [the victim] committed an act which caused bodily harm to Warren Werner, third, that Russell Karlen intended to cause such harm and, fourth, that the act was done without the consent of Warren Werner.

"Bodily harm means physical pain or injury, illness or any impairment of physical condition. Great bodily harm means bodily injury which creates a high probability of death or which causes serious permanent disfigurement or which causes a permanent or protracted loss or impairment of function of any bodily member or organ or other serious bodily injury."

Then follow four additional paragraphs, all dealing with legal requirements for the defendant's conduct to be privileged under a claim of self-defense as to the charge of second-degree murder. Then follows the sentence, on which the claim of error by defendant is based, with two additional sentences concluding the instructions as to the defense of self-defense with respect to the charge of second-degree murder:

"If you find that the defendant did intentionally cause the death of Russell Karlen, and as charged in the Information, but that he did so under circumstances that under the law of self-defense, as it has been explained to you, such use of force was privileged, then you must find the defendant not guilty, giving to the defendant the benefit of any reasonable doubt as to whether his conduct was privileged under the law of self-defense. If, however, you're satisfied beyond a reasonable doubt from the evidence in this case that the defendant killed Russell Karlen by conduct imminently dangerous to another and evincing a depraved mind regardless of human

life and you are satisfied beyond a reasonable doubt from the evidence in this case that the use of force by the defendant against Russell Karlen, if force was so used, was not privileged under the law of self-defense, as it has been defined to you, then you should find the defendant guilty of second-degree murder as charged in the Information. If, however, you are not so satisfied you must not find the defendant guilty of second-degree murder and you should consider whether the defendant is guilty of manslaughter in violation of Section 940.05 (2) of the Criminal Code of Wisconsin."

The first sentence of the above paragraph, taken from the standard jury instructions, is the one claimed to be erroneous. Its use of the word "intentional" derives from the statute defining the right of self-defense,[5] which has been approved by this court.[6] However, the standard instructions parenthesize three alternative phrases, one of which is to be inserted after the word "intentional."[7] The claim of error is that the trial court, in inserting the phrase "cause the death of" selected one of the three that was not appropriate to the facts here. Such error in choice would not alone be ground for reversal. The statute, applicable and controlling, provides:

". . . No judgment shall be reversed or set aside or new trial granted in any action or proceeding, civil or criminal, on the ground of misdirection of the jury, . . . unless in the opinion of the court to which the application

[5] Sec. 939.48 (1), Stats.

[6] *State v. Kanzelberger* (1965), 28 Wis. 2d 652, 660, 137 N. W. 2d 419, certiorari denied, 385 U. S. 867, 87 Sup. Ct. 127, 17 L. Ed. 2d 93.

[7] Wis J I—Criminal, Part I, 805, provides: "If you find that the defendant did intentionally *(cause great bodily harm to) (cause the death of) (use force intended or likely to cause death or great bodily harm against)* . . . , as *(charged) (submitted)*, but that he did so under such circumstances that under the law of self-defense as it has been explained to you, such use of force was privileged, then you must find the defendant not guilty . . . ."

is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure the new trial." [8]

The defendant in his brief seeks to meet this statutory requirement of an error in jury instructions having actually affected the substantial rights of the party seeking reversal by contending, in his brief, that: ". . . the instruction was confusing to the jury, in that it stated that the defense of self-defense applied only if the jury found that the defendant *intended* to kill Karlen. . . ." Viewing the instructions in their entirety and considering them as a whole, the writer sees no basis for holding that such actual affecting of the jury verdict here occurred. The instructions given prior to the complained of sentence were entirely correct statements of the law. Moreover, the paragraphs added at the specific request of the defendant applied such correct interpretation of the law to the facts of this case, with the defendant and victim designated by name to impress such application upon the jury. The sentence immediately following the one complained of makes clear that the defendant did have the right to self-defense as to the charge of second-degree murder. What the judge said before and after the challenged sentence is to be considered where instructions

[8] Sec. 274.37, Stats. *See: Claybrooks v. State* (1971), 50 Wis. 2d 87, 94, 183 N. W. 2d 143, quoting *State v. Kuick* (1948), 252 Wis. 595, 599, 600, 32 N. W. 2d 344, this court stating of this statute: " 'This section [274.37] applies to civil and criminal cases alike by its terms. This section has been in force since 1909 and has been considered by the court many times. The section was enacted to enable the court to avoid reversals on account of errors which did not substantially affect the rights of the defendant. . . .

" '. . . Bare technical error will not justify the disturbance of a verdict even in a conviction of a homicide. *Manna v. State* (1923), 179 Wis. 384, 192 N. W. 160.' "

are reviewed as an entirety.[9] Considering the instructions given as a whole, the writer finds that this jury was made fully aware, not only of each and every element required for a conviction on the charge of second-degree murder, but also of the definite right and limits of the defense of self-defense as to the charge of second-degree murder.

Using the "ordinarily intelligent mind" test,[10] the conclusion that no confusion was created by the sentence complained of is strengthened by the fact that, with self-defense the theory of the defense as to both second-degree murder and manslaughter, the trial judge instructed the jury as to the right and limits of the right of self-defense as to the crime of manslaughter. That instruction as to self-defense on the manslaughter charge included this accurate and unchallenged reference to the special defense of self-defense as to second-degree murder:

"If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant caused the death of Russell Karlen in a manner constituting murder in the second-degree, but you find the defendant committed the act causing Russell Karlen's death believing

---

[9] *See: Wilson v. State* (1973), 59 Wis. 2d 269, 291, 292, 208 N. W. 2d 134, this court holding as to an error in trial court instructions: "In the instant case, although the trial judge twice used the words 'mental conduct' instead of 'criminal conduct,' he thereafter correctly stated 'The defendant under the law has the burden that he was not responsible for the criminal conduct at the time of the crimes because he lacked substantial capacity . . . .' In light of this and the absurdity of the instruction if the trial judge had actually meant 'mental' conduct, it is inconceivable that an 'ordinarily intelligent mind' would have been misled."

[10] *Id.* at page 291, this court stating: ". . . Because the judge's true meaning must have been apparent to the 'ordinarily intelligent mind' no harm could be said to result from the mistake." (Citing *Butler v. State* (1899), 102 Wis. 364, 78 N. W. 590.)

that his act was necessary in self-defense but that his belief was unreasonable under the circumstances, then you should find the defendant guilty of manslaughter."

While the writer finds no basis for confusion here having been created in a juror with a reasonably intelligent mind, the statute limiting reversals for misdirected juries further requires that the appellate court, considering such reversal on the ground of trial court error in instructions, make ". . . an examination of the entire action or proceeding . . ." to determine if ". . . the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment. . . ." [11] Reviewing the entire instructions, the writer concludes that the jury here "was apparently not misled." [12] To comply with the statutory mandate, we add that nothing deriving from examination of the entire action or proceedings alters the holding that the single sentence error had no actual effect on a substantial right of the party seeking reversal. While the issue raised as to sufficiency of evidence to sustain conviction, rejected on this appeal, required consideration both of evidence supporting the case of the state and evidence produced by and on behalf of the defendant, no detailing of such examination of the record is required to note that neither prejudicial error nor impact upon the verdict reached is found here. The jury instructions, considered in their entirety and as a whole, meet the requirement of adequately covering the legal theory of the defense as to self-defense, [13] and did not create confusion in the minds

[11] Sec. 274.37, Stats.

[12] *Wilson v. State, supra*, footnote 9, at page 291, this court stating: "Similarly, in civil cases, this court has held inadvertent errors not to be a ground for reversal where the jury was apparently not misled."

[13] *State v. Davidson, supra*, footnote 2.

of the jurors under the "ordinarily intelligent mind" test.[14]

If the instructions given this jury, considered as a whole and in their entirety, constituted prejudicial and reversible error, there would remain for this defendant the hurdle of his not having objected at time of trial to the instructions as given. This court has consistently held that such failure to timely object waives the right to object.[15] The reason and the rule are well stated in the *Mitchell v. State* decision, holding: ". . . neither defendant personally, nor through his counsel, should be permitted to listen to jury instructions being presented to the jury which he or his counsel believe to be inaccurate or incorrect and await the return of the verdict and, if unfavorable, then complain as a matter of right." [16] This is particularly to be the rule where, as in the case before us, the belated objection is made to the standard or uniform jury instructions used throughout this state.[17]

---

[14] *Wilson v. State, supra*, footnote 9.

[15] *State v. Schenk* (1972), 53 Wis. 2d 327, 333, 193 N. W. 2d 26, this court stating: "This court has consistently held that it would consider the failure to timely object to jury instructions as a waiver of any alleged defects in those instructions [cases cited]. Therefore, since the defendant neither submitted requested instructions, nor objected to those given or requested additional instructions, we conclude that the defendant has waived his right to the instructions as given." *See also: Laster v. State* (1973), 60 Wis. 2d 525, 539, 211 N. W. 2d 13, this court holding: ". . . the record is void of any objection by the defendant to the instruction given. Absent a request made prior to the rendition of the verdict, the objection has long since been waived. *Kimmons v. State* (1971), 51 Wis. 2d 266, 268, 186 N. W. 2d 308."

[16] *Mitchell v. State* (1970), 47 Wis. 2d 695, 700, 177 N. W. 2d 833.

[17] *State v. Kanzelberger, supra*, footnote 6, at page 659, this court holding: "The instruction on self-defense given by the court was substantially the same as Wis J I—Criminal, Part I, 805, 810. These instructions are the product of painstaking effort of an eminently qualified committee of trial judges, lawyers, and legal

In the case before us, the defendant did not object to the instructions given by the judge when they were given, nor did he object on motions after verdict. He objected, for the first time, six months after the judgment of conviction was entered, on his motion for new trial at postconviction proceedings. Where this exact situation was presented to this court, we held that the defendant had waived his right to object to the instructions as given.[18] It is true that the rule of waiver of right to object by reason of failure to timely object ". . . admits of exceptions in cases of 'compelling circumstances. . . .' "[19] Such "compelling circumstances" can hardly be that the belated challenge to the instructions given relate to an issue or special defense significant to the defendant.

scholars, designed to accurately state the law and afford a means of uniformity of instructions throughout the state. They are, as stated by counsel, 'the general instructions used in cases of this kind.' These uniform instructions are not infallible. However, their content is readily known and if they are considered inaccurate or prejudicial they should be challenged by written requested instructions or at least objection made on the record at the time they are given so that if they are erroneous, correction can be made before the jury arrives at a verdict. In this instance neither a request for a specific instruction nor objection to the instruction as given appear in the record." (Quoted in *Mitchell v. State, supra,* footnote 16, at page 700.)

[18] *State v. Cydzik* (1973), 60 Wis. 2d 683, 694, 211 N. W. 2d 421, this court holding: ". . . Defendant now objects to the court's instruction on first-degree murder. While defense counsel did move for dismissal of the first-degree murder count on grounds of insufficiency of evidence, there was no objection at trial to the instruction as given on elements of the crime. While in postconviction motions the defendant did generally claim that the trial court erred in instructing the jury, nowhere were the specific objections raised on appeal raised in the trial proceedings. . . . We conclude that the defendant here has waived his right to object to the trial court instructions as given."

[19] *Brown v. State* (1973), 59 Wis. 2d 200, 214, 207 N. W. 2d 602.

The rule of waiver by not objecting to instructions when they are given does not relate to the crucial significance of the issue or defense involved to the defendant. That would almost always be the situation. It is the significance of his not objecting, rather than the significance of the issue involved, with which the rule of waiver, as above noted, deals. The requirement of timely objection is to prevent a defendant from listening to the instructions being given without objecting, thus reserving both right and reason for objecting until he finds out and only when he finds out that the jury verdict has gone against him. This would give a defendant a bomb to be detonated by him only if, as and when a jury verdict turned out to be unfavorable to him. This court has held that where the defendant's trial counsel "was cognizant" of the issue involved and later challenged, ". . . the defendant has effectively waived any right to such a review [of alleged prejudicial error in the jury instructions] by failure to request a specific instruction or object to the instruction at trial. . . ." [20] Here, the defendant was not only cognizant of the issue, he submitted additional instructions which the trial court accepted and which became the two paragraphs in the instruction immediately preceding the sentence subsequently challenged. Those defendant-requested additions, we have earlier held, were helpful in insuring that the jury understood the defense of self-defense by applying the principles to the defendant and victim by name. However, the helpful addition requested by defendant's trial counsel makes defendant, by counsel, a coarchitect of the instructions to which he now objects. This goes beyond observing the building of a structure in silence to participation in the building. One who joins in constructing a building ought not be permitted later on, much later, to complain of the way in which it was built.

[20] *Langston v. State* (1973), 61 Wis. 2d 288, 293, 212 N. W. 2d 113.

The writer would affirm. I am authorized to state that Mr. Justice LEO B. HANLEY joins in this dissent.